110 F.3d 63
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul Steven BRUTON, Plaintiff-Appellant,
v.
Kenneth L. McGINNIS, et al., Defendants-Appellees.
 No. 96-1409.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1997.
 
 Before: LIVELY, NELSON, and MOORE, Circuit Judges.
 
 ORDER
 
 1
 Paul Steven Bruton, a Michigan prisoner proceeding pro se, appeals a district court judgment dismissing his civil rights action filed under 42 U.S.C. § 1983 and the Religious Freedom Restoration Act of 1993 (RFRA). This case has been referred to a panel of the court pursuant to Rule 9(a), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed.R.App.P. 34(a).
 
 
 2
 Seeking $110,000 in damages as well as declaratory and injunctive relief, Bruton sued various officials and employees of the Michigan Department of Corrections (MDOC) for allegedly violating his rights under the First and Fourteenth Amendments and under RFRA. He claimed that the defendants wrongfully rejected various publications and cassette tapes relating to the Christian Identity religion, of which he is an adherent, without due process and in violation of his right to free exercise of his religion. He further alleged that a package containing a Christian Identity T-shirt was improperly rejected and that his requests to order a Christian Identity lapel pin and to provide group services for the Christian Identity faith were denied in violation of the First Amendment and RFRA.
 
 
 3
 The district court granted the defendants' motion for summary judgment in an opinion and judgment entered on March 21, 1996. The district court concluded that the MDOC's restrictions against materials that advocate violence or are so racially inflammatory as to be reasonably likely to cause violence within the prison were reasonably related to legitimate penological interests and were, therefore, valid. The court found that other materials were rejected because they were from an unapproved vendor and that Bruton was able to receive religious materials from an approved Christian Identity vendor. The T-shirt was permissibly rejected because the color was similar to that worn by prison guards, and the lapel pin was rejected because such items are not on the list of approved prisoner property due to their potential use as a weapon. Notification and hearings were provided in each instance, complying with due process requirements. The district court also found that the denial of Bruton's request for Christian Identity group services did not violate his right to free exercise of his religion because scheduling constraints justified the provision of more "generic" Christian services. Finally, the district court found that none of the actions complained of substantially burdened Bruton's exercise of his faith within the meaning of RFRA.
 
 
 4
 On appeal, Bruton argues that the district court erred in granting summary judgment for the defendants because factual issues were in dispute. He continues to argue the merits of his claims.
 
 
 5
 Upon review, we affirm the district court's order because the record establishes that there is no genuine issue as to any material fact and the defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); accord Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995). This court reviews an order granting summary judgment de novo and, hence, uses the same test as used by the district court. Id.
 
 
 6
 Although prisoners do not lose their First Amendment right to freely exercise their religion, Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972) (per curiam), this right may be subjected to reasonable restrictions and limitations in the prison setting. Bell v. Wolfish, 441 U.S. 520, 549-51 (1979). Under RFRA, the government is prohibited from substantially burdening a person's exercise of religion unless doing so furthers a compelling government interest and it is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1(b); Abdur-Rahman v. Michigan Dep't of Corrections, 65 F.3d 489, 492 (6th Cir.1995) (order). Because of RFRA's broad expressed purpose, RFRA now governs prisoners' free exercise claims. Stefanow v. McFadden, --- F.3d ----, 1996 WL 737423, at * 1 (9th Cir. Dec. 27, 1996); Haff v. Cooke, 923 F.Supp. 1104, 1112 (E.D.Wis.1996). Under RFRA, Bruton must make a threshold showing that the defendants' actions imposed a substantial burden on his exercise of religion. Stefanow, 1996 WL 737423, at * 5. "This interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." Id. (internal citation omitted). The district court properly granted summary judgment to the defendants as to Bruton's RFRA claim because Bruton has not shown that the prison substantially burdened the exercise of his religion.
 
 
 7
 Furthermore, although Bruton asserts on appeal that some facts are in dispute, he has failed to establish that there is any genuine issue of material fact as to his First Amendment claim. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 8
 Insofar as Bruton's claim may be interpreted as a free speech claim, also protected by the First Amendment, that claim must also fail. Under a freedom of speech analysis, a prison regulation is valid if it is reasonably related to legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987). The regulations under which Bruton's religious items were confiscated prohibited materials that both advocated racial supremacy and were likely to incite violence, the ownership of pins, and clothing similar to that worn by prison guards.
 
 
 9
 When examined under the Turner test, the regulations clearly pass constitutional muster. Bruton contends that, while advocating white supremacy, the rejected materials do not advocate violence. However, the district court properly concluded that the prison's legitimate interest in safety and security would be threatened by the confiscated items. Courts are reluctant to second-guess prison officials in matters of security, even where religious issues are involved. See Haff, 923 F.Supp. at 1118. The district court properly found that the ownership of materials and symbols associated with the hatred of blacks and Jews could incite violence among a segment of society already prone to violence. Bruton was allowed to order, from an approved vendor, other Christian Identity materials less likely to incite violence.
 
 
 10
 The prison considered the request by Bruton's Christian Identity group for special services along with similar requests by other religious groups. Scheduling constraints make it clearly unreasonable to provide separate group services for every religious sect that may arise. It is, therefore, reasonable to examine the beliefs of each group, as the prison did in this case, and determine which could be adequately, albeit not completely, served by inclusion with more "generic" religious services. If Bruton declines to take advantage of those services, that is his own choice.
 
 
 11
 Accordingly, the district court's judgment, entered on March 21, 1996, is affirmed. Rule 9(b)(3), Rules of the Sixth Circuit.