**OMEGA WORLD TRAVEL,
INCORPORATED,
Plaintiff–Appellee,**

v.

**TRANS WORLD AIRLINES,
Defendant–Appellant,**

and

**Airlines Reporting Corporation,
Defendant.**

**No. 96–1368.**

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 29, 1997.

Decided April 2, 1997.

**ARGUED:** R. Hewitt Pate, Hunton & Williams, Richmond, Virginia, for Appellant. Barry Roberts, Roberts & Hundertmark, Chevy Chase, Maryland, for Appellee. **ON BRIEF:** Thomas G. Slater, Jr., Sarah C. Johnson, Hunton & Williams, Richmond, Virginia; Charles E. Bachman, O'Sullivan, Graev & Karabell, L.L.P., New York City, for Appellant.

Before HALL and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Reversed by published opinion. Judge LUTTIG wrote the opinion, in which Judge HALL and Senior Judge BUTZNER joined.

## OPINION

LUTTIG, Circuit Judge.

The dispute before us arose from Omega World Travel's conduct as a ticketing agent for Trans World Airlines pursuant to the "Agency Reporting Agreement" (ARA), a standard contract prepared by the Airlines Reporting Corporation (ARC). Because Omega, over TWA's strenuous objections, persisted in marketing TWA tickets for a company controlled by former TWA controlling shareholder Carl Icahn, TWA filed a suit against Omega in Missouri state court, alleging that Omega's sale of the Icahn tickets violated the ARA and Omega's agency obligations of loyalty and good faith. Omega in turn sued TWA and ARC in the federal district court for the Eastern District of Virginia on federal antitrust and state contract law grounds in the action underlying the appeal *sub judice.* After TWA allegedly threatened to terminate Omega as its agent, Omega sought, and the district court granted, a preliminary injunction prohibiting TWA from terminating the agency relationship between the two companies. We stayed the injunction and thereafter denied a motion by Omega to dissolve the stay. TWA, in the interim between our two orders, terminated its agency relationship with Omega. Before us now is TWA's appeal of the district court's mandatory preliminary injunction. Because neither Omega's state-law claims nor its federal antitrust claims support the extraordinary mandatory injunction granted by the district court, we reverse the district court's grant of injunction.

The district court granted the preliminary injunction based upon its belief that there was "some likelihood" that Omega would prevail on the merits of its claims against TWA. J.A. at 45.[1] Although it is not entirely clear from the court's bench ruling, we understand the district court to have based its conclusion more upon its assessment that Omega's federal antitrust claims might ultimately prove meritorious, than on a belief that there was a likelihood that Omega would prevail on its state law contract claims against TWA. Neither set of claims, we believe, will support the mandatory injunctive relief granted.

■ Omega's claim that the ARC system violates the Sherman Act cannot, as a matter

---

1. District courts should only grant preliminary injunctions in cases "clearly demanding" such interim relief, particularly where, as here, the interim relief does more than merely preserve the status quo. *Direx Israel v. Breakthrough Medical Corp.,* 952 F.2d 802, 814–15 (4th Cir.1991); *Wetzel v. Edwards,* 635 F.2d 283, 286 (4th Cir. 1980). Although the district court seemed to believe that the preliminary injunction in question preserved the status quo agency relationship, the injunction is best characterized as mandatory because it orders the parties to continue in a relationship that would otherwise, under the contract, be terminable at will.

of law, support an injunction requiring TWA to remain involuntarily in a contractual business relationship with Omega. The purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends it was or will be harmed through the illegality alleged in the complaint. Thus, a preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action. As the Eighth Circuit held in *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.1994), "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."

Here, Omega sought and obtained a mandatory preliminary injunction in order to prevent the harm that would result were its agency relationship with TWA terminated. In its underlying complaint, however, Omega alleges that that very same relationship is invalid under the Sherman Act and that it has been injured by the continuation of that relationship into which it was allegedly coerced. Thus, as TWA emphasizes, Omega literally seeks through its antitrust claim to dissolve the very contractual relationship which it seeks to have preserved through preliminary injunction. When the injury that the movant seeks to prevent through a preliminary injunction is not only unrelated, but directly contradictory to, the injury for which it seeks redress in the underlying complaint, then a preliminary injunction simply should not issue.[2]

To the extent, if any, that the district court believed there was a likelihood that Omega would succeed on its state law breach of contract claim, we believe the district court was likewise clearly mistaken. Section X(E) of the ARA expressly provides that "[a] carrier appointment may be terminated as between the Agent and any individual carrier at any time by notice in writing from one to the other." Appellant's Br. at 3. No other contractual provision addresses the right of either party to terminate the contract. Thus, as Omega itself readily concedes, TWA was permitted under the contract to terminate Omega "at will." Given that the parties bound themselves contractually to an "at will" relationship, terminable by either party at any time, and that under neither Virginia nor Missouri law can an implied duty of good faith and fair dealing override explicit contract terms, *see, e.g., Riggs National Bank v. Linch*, 36 F.3d 370, 373 & n. 5 (4th Cir.1994); *Cameron, Joyce & Co. v. State Highway Commission*, 350 Mo. 389, 166 S.W.2d 458, 460 (1942),[3] none of the reasons Omega ascribed to TWA in its preliminary injunction motion for threatening termination of the relationship likely would, as a matter of law, prevent TWA from terminating the relationship with Omega.

Omega does contend in its amended complaint, as previously noted, that TWA's actual termination of the relationship subsequent to our stay of the district court's injunction was in furtherance of TWA's alleged restraint of trade. *See supra* note 2. However, even assuming that TWA could not exercise its contractual right to terminate Omega at will if such termination was in furtherance of a restraint of trade, that allegation was not before the district court and therefore, again,

---

2. Omega did not specifically urge in its preliminary injunction motion that the threatened termination would be in furtherance of a restraint of trade. Omega asserted only that TWA's termination threat was in retaliation for Omega's institution of the antitrust suit. J.A. at 106. Omega does allege in its *amended* complaint that TWA terminated Omega in furtherance of TWA's restraint of trade. The amended complaint, however, was not before the district court when it ruled on the preliminary injunction motion, and, consequently, we do not consider that complaint in judging whether the preliminary injunction was properly awarded.

3. There is some disagreement regarding whether Missouri law or Virginia law will ultimately govern the contract dispute between these two parties. Omega argued to the district court that Virginia law prohibited a bad faith termination, but the district court stated that Omega's claims are "heavily dependent on Missouri law." *Omega World Travel, Inc. v. Trans World Airlines, Inc.*, No. 960201–A (E.D.Va. Oct. 23, 1996). Because of the coincidence of law on the subject of whether an implied term of good-faith takes precedence over an explicit contractual term to the contrary, we need not concern ourselves here with which law will, in the end, be applicable.

is not properly considered as a possible justification for award of the mandatory injunction now before us.

For the reasons stated, the district court's grant of the preliminary injunction is reversed.

*REVERSED.*