RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0135p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
—————————————

KENNETH COLVIN, JR.,

　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

PATRICIA L. CARUSO, MDOC Director, in her
official and personal capacities; DAVE
BURNETT, MDOC Special Activities
Coordinator, in his official and personal
capacities; WAYNE DESHAMBO, LMF Food
Service Director, in his official and personal
capacities; GERALD ANDERSON, LMF
Assistant Food Service Director, in his
official and personal capacities; GERALD
RILEY, LMF Chaplain, in his official and
personal capacities,

　　　　　　　　*Defendants-Appellees.*

No. 08-2441

—————————————

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 07-00061—R. Allan Edgar, District Judge.

Submitted: March 10, 2010

Decided and Filed: May 13, 2010

Before: COLE, GILMAN, and WHITE, Circuit Judges.

—————————————

**COUNSEL**

**ON BRIEF:** Kevin Himebaugh, OFFICE OF THE MICHIGAN ATTORNEY GENERAL,
Lansing, Michigan, for Appellees. Kenneth Colvin, Jr., Ionia, Michigan, pro se.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.   Upon being transferred from one Michigan prison facility to another, inmate Kenneth Colvin, Jr. was mistakenly denied kosher meals for 16 days.  The prison to which he was transferred, once it realized its mistake, immediately placed Colvin in the kosher-meal program, but on various occasions thereafter inadvertently served Colvin nonkosher food items.  Although he was later transferred to a third prison facility, Colvin sued multiple officials associated with the interim prison in question, alleging that its food-service errors, as well as the prison's lack of Jewish services and literature, violated his constitutional rights.

The district court granted summary judgment in favor of the defendants.  It also denied Colvin's motions for a preliminary injunction, for discovery, and to amend his complaint.  Colvin appeals each of these determinations.  For the following reasons, we **AFFIRM** the district court's grant of summary judgment with regard to the claims in Colvin's original complaint, its denial of his motion for discovery, and its denial of his motion for a preliminary injunction based on his original complaint.  We **VACATE**, however, the district court's denial of Colvin's motion to amend and its denial of his second motion for a preliminary injunction.  Finally, we **REMAND** the case for further proceedings consistent with this opinion.

**I.  BACKGROUND**

**A.     Factual background**

Colvin, an inmate within the Michigan Department of Corrections (MDOC) system, was transferred to the Alger Maximum Correctional Facility (commonly referred to as LMF) on February 28, 2006.  He had been placed in a kosher-meal program pursuant to a 2003 settlement agreement and court order from a prior lawsuit and, upon being notified of his transfer, he requested that he maintain the same status while he was at LMF.  But LMF officials initially denied Colvin kosher-meal status, erroneously believing that Colvin was not approved for the program and that he was a Muslim.

In response, Colvin wrote the officials to notify them of his prior approved status, and he filed two grievances. The LMF officials finally placed Colvin on the kosher-meal program as of March 15, 2006, and noted in a response to one of Colvin's grievances that the "initial denial was incorrect" and that the kitchen staff should "accommodate him as quickly as possible." All told, Colvin was mistakenly denied kosher-meal status for 16 days.

Even after being placed on the program, Colvin inadvertently received nonkosher food on various occasions. In October 2006, for example, the prison kitchen sent Colvin nonkosher orange juice and a nonkosher vegetarian burger and, in November 2006, similarly sent him a nonkosher bagged meal. Colvin filed a grievance following each of these incidents and, in their responses, LMF officials admitted to making mistakes and stated that they had instructed the kitchen staff regarding proper kosher-food service.

In addition, from September through December 2006, Colvin filed various grievances asserting that he was served nonkosher lasagna, bread, milk, powdered milk, eggs, and muffins. Colvin further alleged in his complaint that his meals were not securely wrapped and were served on trays carrying nonkosher foods, and he objected to there being no "Jewish practicing prisoners" to prepare his meals. Finally, Colvin accused the prison of using a vegetarian kosher menu distinct from that required under MDOC's policies. LMF officials denied all of Colvin's allegations that they were violating kosher food-preparation and serving protocols.

Colvin asserted one additional claim unrelated to his kosher diet, alleging that he was denied the ability to practice his religious beliefs while incarcerated at LMF. He claimed that the prison has only four Jewish books and that, despite his complaints regarding the lack of Jewish materials and the need for funds to purchase additional books, the prison denied his requests. LMF responded to this assertion by presenting evidence that it has at least twelve Jewish books in its library. Colvin also objected to the lack of Jewish services and notes that he was told on multiple occasions that such services were not available because he was the only inmate requesting them.

In May 2007, Colvin was removed from the kosher-meal program after he was found to have nonkosher protein powder in his possession. Colvin refiled for kosher status two months later, but was denied reentry after being interviewed by Gerald Riley, the chaplain

at LMF. During the interview, Chaplain Riley asked Colvin to briefly explain (1) the teachings of Judaism, (2) why a kosher diet is required by Judaism, and (3) what a kosher diet is and how it differs from food otherwise provided by the prison. In a memo to the LMF warden at that time, Riley concluded that Colvin did "not have any sincerely held religious belief in Judaism." He added that Colvin provided "only minimal information in response to my questioning about his faith's major teachings." Riley further asserted that Colvin had declared "Muslim" as his religious preference in February 2002 and described Colvin as a "self-identifying Muslim."

MDOC Special Activities Coordinator Dave Burnett echoed Chaplain Riley's conclusions in a separate memo to the LMF warden shortly thereafter. Relying on Riley's questioning of Colvin, Burnett reported that Colvin "interviewed as if he were Jewish" but that his "faith of preference is Al Islam." Burnett observed that Colvin "provided nothing that suggests his request for the Kosher meal program is motivated by a sincere desire to pursue religious practice," and thus recommended denying Colvin reentry into the kosher-meal program. In July 2007, sometime between the warden's receipt of the separate memos from Riley and Burnett, Colvin was transferred to the Marquette Branch Prison.

**B.      Procedural background**

Colvin filed his complaint pro se in March 2007, asserting that the 16-day denial of kosher food, the multiple mistakes in administering the kosher-meal program, and the lack of Jewish services and literature violated his constitutional rights under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. He named as defendants MDOC Director Patricia Caruso, MDOC Special Activities Coordinator Dave Burnett, LMF Food Service Director Wayne DeShambo, LMF Assistant Food Service Director Gerald Anderson, and Chaplain Gerald Riley, all of whom were sued in both their individual and official capacities. In addition to requesting injunctive relief to rectify the alleged errors in LMF's kosher-meal program, library, and religious services, Colvin sought $750,000 in damages. Shortly after filing his complaint, Colvin also filed a motion for a preliminary injunction, which the district court denied by adopting the conclusion of the magistrate judge's Report and Recommendation (R & R) that Colvin had not demonstrated a likelihood of success on the merits.

The prison officials then moved for summary judgment. In a second R & R, the magistrate judge rejected the prison officials' claim that Colvin had not properly exhausted his grievances, but nonetheless recommended granting the motion on other grounds. First, the magistrate judge concluded that Chaplain Riley was entitled to qualified immunity regarding the 16-day delay in placing Colvin in the kosher-meal program. The magistrate judge next found that although Caruso and Burnett had not joined in the motion for summary judgment, the claims against them should similarly be dismissed because they were not personally involved in the denial of kosher meals to Colvin. Finally, the magistrate judge dismissed the claims against DeShambo and Anderson because any errors in the preparation of Colvin's kosher meals were inadvertent and isolated.

In addition, the magistrate judge recommended granting summary judgment to all of the defendants on Colvin's remaining claims under RLUIPA and § 1983. The magistrate judge reasoned that the failure to provide Jewish services was reasonable because Colvin was the only prisoner requesting them and that the prison never prevented Colvin from practicing his religious beliefs. Colvin's motions to amend his complaint and to conduct discovery were also denied by the magistrate judge, who concluded that neither action would have cured the defects in Colvin's claims.

Adopting the second R & R in full without further analysis, the district court granted the defendants' motion for summary judgment and denied all three of Colvin's motions. This timely pro se appeal followed.

## II. ANALYSIS

### A.      Summary judgment

Colvin appeals the district court's grant of summary judgment to the prison officials as to both his RLUIPA claim and his § 1983 claim. We review de novo a district court's grant of summary judgment. *ACLU of Ky. v. Grayson County*, 591 F.3d 837, 843 (6th Cir. 2010). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the district court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### 1.     RLUIPA claim

Colvin's first issue challenges the district court's grant of summary judgment with respect to his claims under RLUIPA regarding the prison's kosher-meal program and his alleged denial of Jewish services and literature at LMF.  The RLUIPA statute provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Colvin sought damages, a declaratory judgment, and an injunction based on his original complaint, but none of these forms of relief are available to him.  Although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), this court has recently held that monetary damages are not available under RLUIPA.  *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."), *petition for cert. filed*, 78 U.S.L.W. 3065  (U.S. July 22, 2009) (No. 09-109).

This leaves Colvin's requests for declaratory and injunctive relief.  But these forms of relief are moot because Colvin's requests were directed specifically at LMF's policies and procedures and were not targeted at the MDOC kosher-meal program as a whole.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding that a prisoner's request for injunctive relief from prison inspection of his mail was moot because he had been transferred to a

different facility that did not search his mail).  Accordingly, we affirm the district court's grant of summary judgment on Colvin's RLUIPA claim as set forth in his complaint.

### 2.     § 1983 claim

Colvin next challenges the district court's denial of his § 1983 claim.  As noted above, any declaratory or injunctive relief that Colvin seeks stemming from his complaint has been mooted by his transfer to a different prison facility.  We therefore need consider only whether Colvin is entitled to monetary damages for any alleged violation of his constitutional rights under § 1983.

Colvin sued the prison officials in both their individual and official capacities.  Although the magistrate judge failed to make mention of it in his second R & R, all of the officials are entitled to Eleventh Amendment immunity on Colvin's claims for damages against them in their official capacities.  *See Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver.") (citation and ellipsis omitted).  Anderson, DeShambo, and Chaplain Riley raised the issue of Eleventh Amendment immunity before the district court and therefore did not waive their right to this defense.

We also have the authority to raise the issue of sovereign immunity as it applies to Caruso and Burnett despite their failure to assert the defense in the district court.  "The Sixth Circuit has largely followed the 'jurisdictional bar' approach [to sovereign immunity] by holding that a federal court can raise the question of sovereign immunity sua sponte because it implicates important questions of federal-court jurisdiction and federal-state comity."  *Id.* (citations and internal quotation marks omitted).  Accordingly, we need consider Colvin's § 1983 claims against the prison officials only in their individual capacities.

### a.     Chaplain Riley

In granting the prison officials' motion for summary judgment, the district court first concluded that Chaplain Riley was entitled to qualified immunity. (Although Anderson and DeShambo might also be entitled to qualified immunity, they failed to raise this defense in the district court or on appeal and have therefore waived the argument.  *See Brown v.*

*Crowley*, 312 F.3d 782, 788 (6th Cir. 2002) ("[T]he defense of qualified immunity may be deemed as waived if not properly and timely presented before the district court." (citation omitted)).)   The district court found that Riley's only involvement in the kosher-meal program was his response to correspondence that Colvin had sent to the warden regarding the program, that Riley's belief that Colvin was a Muslim was reasonable, and that any delay that Colvin experienced in receiving kosher meals was unintentional and was resolved in a reasonable amount of time.

To prevail on his § 1983 claim, Colvin must show that Chaplain Riley deprived him of his First Amendment right to practice his religion.  *See Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) ("In order to prevail on a civil rights claim under 42 U.S.C. § 1983, plaintiffs must establish that a person acting under the color of state law deprived them of a right secured by the Constitution or laws of the United States.").  As a state employee, however, Riley is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See id.* (citation omitted).

A two-part test is used to determined whether qualified immunity applies: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005).  For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009).  We are "free to consider [the two-part test] in whatever order is appropriate in light of the issues before us," and therefore need not decide whether there was a constitutional violation if we determine that an official in Riley's position would reasonably believe that his actions were not in contravention of Colvin's constitutional rights.  *See Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citation omitted).

This court has previously held that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002).  "If the prisoner's diet . . . is sufficient to sustain the

prisoner in good health, no constitutional right has been violated." *Id.* In *Alexander*, an inmate requested a grape-free diet in accordance with his Nazerite religion. He was subsequently placed on close-observation status for approximately three weeks, and he received "breakfast bags" for his morning meal during two of those weeks. (For the other week, Alexander was placed on a special Nutri-loaf diet.) Each bag contained milk, fruit, and a peanut-butter and grape-jelly sandwich. Observing that Alexander received other nongrape food for his other meals while on close-observation status, the court concluded that the prison officials' denial of his request for a plain peanut-butter sandwich at breakfast did not violate Alexander's constitutional rights. *Id.*

Many of the facts in the present case mirror those of *Alexander*. Colvin, like Alexander, received food that was not in accordance with his religious beliefs for a temporary period of time and, by his own admission, Colvin was able to eat other food (fruit) in lieu of the nonkosher items. But unlike Alexander, who received the offending food at only some of his meals, Colvin received nonkosher food at every meal for the first 16 days he was at LMF and was therefore limited to eating fruit during that time. The instant case thus presents a closer call regarding whether Colvin received food "sufficient to sustain [him] in good health." *See id.*

Nonetheless, we need not decide this issue because Colvin has not pointed to any evidence showing that Chaplain Riley acted unreasonably or that he "knowingly" violated Colvin's rights. *See Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" (citation omitted)). Rather, Riley, consistent with his job function, received Colvin's request for kosher meals, checked Colvin's eligibility, and was informed that Colvin was a Muslim and therefore not qualified for the program. Riley, at worst, committed a "reasonable mistake" as to Colvin's status, a mistake that does not disqualify him from receiving qualified immunity. *See Dorsey*, 517 F.3d at 394 ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the [conduct of a government official]." (citation omitted)). Furthermore, once the mistake was discovered, LMF officials, including Riley, worked "as quickly as possible" to ensure that Colvin received kosher meals.

Chaplain Riley is similarly entitled to qualified immunity on Colvin's claims regarding the lack of Jewish services and literature in the prison library because Riley's actions were reasonable. He justified the lack of Jewish services by noting that Colvin was the only inmate requesting them and that, under LMF policies, a minimum number of inmates must request religious services before they will be held.

This court has consistently permitted prisons to take into account the level of inmate interest in a particular religion when determining whether to hold services. *See, e.g.*, *Spies v. Voinovich*, 173 F.3d 398, 404 (6th Cir. 1999) (concluding that a prison's requirement that a minimum of five inmates of a particular faith must be interested in forming a faith group before the prison will provide for religious services has a "valid, rational connection to legitimate government interests in maintaining security and allocating prison resources"); *Hall v. Tyszkiewicz*, 28 F. App'x 493, 495-96 (6th Cir. 2002) (holding that an inmate was not deprived of his constitutional rights where the prison did not hold Jewish services due to a lack of interest, and where a rabbi visited the inmate once a month); *Bruton v. McGinnis*, 110 F.3d 63, 1997 WL 139797, at *3 (6th Cir. Mar. 26, 1997) (unpublished table decision) ("Scheduling constraints make it clearly unreasonable to provide separate group services for every religious sect that may arise."). In addition, Colvin points to no restrictions on his ability to practice Judaism privately, read Jewish literature, or correspond with other practitioners of the Jewish faith. *See Spies*, 173 F.3d at 404-05 (concluding that an inmate's ability to "meditate privately in the chapel, correspond with fellow believers, and consult individually with a personal minister" demonstrated that he had alternative ways of exercising his religious rights).

Colvin also argues that LMF violated his constitutional rights by having only four Jewish books in the prison library. (The prison maintains that it has twelve such books.) But Colvin has not shown that LMF is required to keep a set number of religious books in its library or that the prison is in any way prohibiting him from receiving religious materials through other means. *See Wilson v. Schwarz*, 99 F.3d 1141, 1996 WL 603656, at *1 (6th Cir. Oct. 21, 1996) (unpublished table decision) (holding that a prisoner's right to practice Islam was not violated where several Islamic books were available to inmates and inmate access to religious material from other sources was not "unduly restricted"). Accordingly, Colvin can point to no violation of his constitutional rights stemming from any lack of

Jewish materials at LMF.  Chaplain Riley is therefore entitled to qualified immunity on all of Colvin's claims against him as set forth in the complaint.

### b.       *Caruso and Burnett*

The district court next dismissed Colvin's § 1983 claims against Caruso and Burnett because they hold supervisory positions within the Michigan prison system and were not personally involved in any of the alleged incidents at LMF.  Allegations of *respondeat superior* do not sustain a § 1983 claim against state employees in their individual capacities, meaning that officials are personally liable for damages under that statute "only for their own unconstitutional behavior."  *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).  That is, "even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it."  *Cardinal v. Metrish*, 564 F.3d 794, 802-03 (6th Cir. 2009) (citations and internal quotation marks omitted).  To succeed on his claim, Colvin must therefore show that Caruso and Burnett "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *See id*. at 803 (citations omitted).

Colvin does not allege that Caruso had any involvement in the administration of the kosher- meal program or the Jewish services and literature selection at LMF.  There is also no allegation in Colvin's complaint that Burnett was involved in any of the incidents about which Colvin complains or that he was in any way "actively involved" in the denial of kosher food, literature, or religious services.  *See id*. (affirming the grant of summary judgment on a § 1983 claim against a prison warden where there was no allegation that the warden was "actively involved in the denial of kosher food").  In fact, the only evidence of Burnett's involvement is his instruction to Chaplain Riley that Colvin be placed in the kosher-meal program "as soon as possible" upon Burnett's being alerted to the mistake of Colvin not receiving kosher meals.  The district court therefore did not err in granting summary judgment on Colvin's § 1983 claims against Caruso and Burnett in their individual capacities.

### c.      *DeShambo and Anderson*

As with Chaplain Riley, Caruso, and Burnett, the district court granted summary judgment in favor of DeShambo and Anderson.  Unlike Caruso and Burnett, however, DeShambo and Anderson are specifically identified by Colvin as having been actively involved in serving Colvin nonkosher food items.  We must therefore address the merits of Colvin's claim that their conduct deprived him of his constitutional rights.

An inmate's claim regarding a constitutional violation is analyzed under the framework set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  Under that framework, prison regulations that impinge on an inmate's constitutional rights are valid if they are "reasonably related to legitimate penological interests."  *Id*. at 89.  This deferential standard is employed in light of the "inordinately difficult undertaking" of prison administration, which "requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."  *Id*. at 85.  We accordingly consider four factors to determine the reasonableness of a challenged regulation:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together:  (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimus cost to valid penological interests.

*Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999) (citations and internal quotation marks omitted).

After citing these factors, the magistrate judge did not conduct a further *Turner* analysis, presumably because Colvin does not challenge LMF's kosher-meal policy itself. He instead contends that DeShambo and Anderson on multiple occasions violated the policy by mistakenly serving him nonkosher food.  In evaluating this claim, the magistrate judge found dispositive the fact that any mistakes in serving Colvin nonkosher food were "isolated incidents," that there was no evidence that the LMF staff was intentionally serving him

nonkosher items, and that, after each incident, the LMF staff addressed Colvin's complaints and worked to correct their errors. The district court agreed.

These findings are not erroneous. Because Colvin has asserted only isolated incidents of DeShambo and Anderson serving him nonkosher food, and because these incidents are not sufficient to sustain his claim, we find no error in the district court's ruling. *See Johnson v. Wilkinson*, 229 F.3d 1152, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) (unpublished table decision) (holding that a prisoner's allegations about "random and isolated interference with [his] mail" did not rise to the level of a First Amendment violation). In addition, LMF presented evidence showing that, pursuant to LMF policy, had Colvin alerted LMF food-service workers to the fact that he received nonkosher items when the food was being served (rather than later filing grievances), such items could have been promptly replaced with kosher items.

Nor is there any evidence that the isolated mistakes were willful. *See Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (affirming the dismissal of an inmate's claim that kosher utensils were contaminated because, despite evidence that prison officials might have "imperfectly implemented the kosher requirements, or were even negligent," there was "no basis to conclude that any of the defendants deliberately contaminated the kosher utensils"). Given the isolated nature of the nonkosher food service and the lack of any evidence indicating deliberate violations of LMF's kosher-meal program, Anderson and DeShambo are entitled to summary judgment on Colvin's claims.

**B.      Motion for discovery**

Colvin next contends that the district court improperly denied his request for discovery. In September 2007, the magistrate judge issued an order staying discovery and stating that, to the extent Colvin desired to engage in discovery to defend against the prison officials' motions for summary judgment, he could "so state in his response to the dispositive motion[s], indicating as specifically as possible what facts he believes might be revealed in discovery which will support his cause." Colvin in fact requested discovery in his response to the prison officials' motion for summary judgment, but he did not specify how the discovery would help his cause. The magistrate judge therefore recommended denying Colvin's motion.

We review a district court's decision concerning discovery matters under the abuse-of-discretion standard. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). "[A] plaintiff complaining that a district court granted summary judgment without allowing adequate discovery must, at a minimum, be able to show that he could obtain information through discovery that would disclose material facts." *Id*.; *see also Sierra Club v. Slater*, 120 F.3d 623, 628 (6th Cir. 1997) (holding that the denial of the plaintiffs' request to take a deposition was not an abuse of discretion because the plaintiff had failed to show "how the deposition would have aided their opposition to summary judgment").

Colvin argues that, had he been permitted to conduct discovery, he would have requested information regarding inspections of the LMF kosher-meal program, a copy of the MDOC kosher- meal policies, the names of the food-service workers who handled kosher meals, and the name of the official who approved the kosher-meal program. The information requested, however, would not have cured the defects in Colvin's claims because he would still have been unable to show, for the reasons set forth above, that his constitutional rights were violated. Accordingly, the district court's denial of Colvin's discovery request was not an abuse of discretion.

## C.        **Motion to amend complaint**

Colvin further argues that the district court erred in denying his motion to amend his complaint. We review the denial of a motion to amend under the abuse-of-discretion standard, "unless the motion was denied because the amended pleading would not withstand a motion to dismiss, in which case the standard of review is de novo." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437 (6th Cir. 2008). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). Although a district court's failure to state a basis for its decision to deny a motion to amend ordinarily constitutes an abuse of discretion, such an abuse amounts to harmless error where the proposed amendment would have been futile. *Konkol v. Diebold, Inc.*, 590 F.3d 390, 404 (6th Cir. 2009) (holding that the district court did not err in denying a motion to amend the

complaint because the lack of allegations regarding scienter in a securities-law case rendered the proposed amended complaint futile).

The Federal Rules of Civil Procedure generally permit a plaintiff to "amend [his] pleadings once as a matter of course." Fed. R. Civ. P. 15(a)(2). Otherwise, the complaint may be amended "only with the opposing party's written consent or the court's leave," and a "court should freely give leave when justice so requires." *Id.* In the present case, the magistrate judge concluded, without any analysis, that Colvin's proposed amended complaint would be futile. This ruling was upheld by the district court, again without any analysis.

We agree in part with the district court's conclusion. A portion of Colvin's motion to amend sought to add the names of LMF food-services workers who were allegedly responsible for serving him nonkosher items. But, as discussed above in Part II.A., Colvin's claims fail not because he is unable to identify these workers by name, but because he has not shown that his constitutional rights were violated in any of the instances described. His proposed amendment to add these names would therefore have been futile.

We also conclude, however, that the district court abused its discretion by failing to address two additional claims that Colvin raised in his motion to amend. These claims allege that Colvin (1) was wrongly removed from the kosher-meal program, and (2) was wrongly denied reinstatement by Burnett, Chaplain Riley, and other prison officials. Although he labels these claims as constituting "retaliation and conspiracy," Colvin, as in his original complaint, seeks relief in his proposed amended complaint pursuant to RLUIPA and § 1983. We will accordingly analyze his proposed additional claims as being brought under these two statutes.

As discussed in Part II.A.1. above, the Eleventh Amendment bars Colvin's claims for monetary damages under RLUIPA. But, unlike Colvin's original claims for injunctive and declaratory relief, which were moot because Colvin had been transferred from LMF to another prison, we cannot conclude that the claims in Colvin's proposed amended complaint are moot for the same reason. This is because the Marquette Branch Prison, the facility to which Colvin was transferred, relied on LMF's removal of Colvin from kosher-meal status to justify a continuation of the status quo. The chaplain of this latter prison relied on

Burnett's memo in concluding that Colvin's religious preference was Muslim and that he was therefore not eligible to receive kosher meals. No additional interviews or questioning appear to have taken place. The record thus indicates that LMF's removal of Colvin from kosher-meal status and its subsequent refusal to reinstate him had long-term consequences for Colvin within the Michigan prison system, even after he was transferred away from LMF.

Whether a prison transfer moots an inmate's claim where the inmate faces the potential for future harm following the transfer is undecided in this circuit. In *Berryman v. Granholm*, 343 F. App'x 1 (6th Cir. 2009), this court held that a Michigan inmate's request for declaratory and injunctive relief regarding his removal from the kosher-meal program was moot upon being transferred to a different prison. *Id*. at 4-5. But the *Berryman* court did not face the question of whether the inmate was denied kosher meals at the second prison based on his initial removal from the program at the prior prison, so there was no indication that any alleged harm was on-going. Moreover, at least two other circuits that have considered the effect that a prison transfer has on an inmate's claim for equitable relief have refused to dismiss the inmate's claim as moot. In *Andreola v. Wisconsin*, 171 F. App'x 514 (7th Cir. 2006), the United States Court of Appeals for the Seventh Circuit held that a prisoner's claim for injunctive relief after he was allegedly denied "ultra Orthodox" kosher food when housed at another prison was "not moot because [the senior personnel in the State of Wisconsin's Department of Corrections] can control his diet throughout the state's prison system." *Id*. at 515.

The Eighth Circuit reached a similar result in *Randolph v. Rodgers*, 170 F.3d 850 (8th Cir. 1999). There, a deaf prisoner sought an injunction as part of his claim that the Missouri prison where he had previously been housed had wrongfully deprived him of a sign-language interpreter. *Id*. at 857. The district court found this claim to be moot, but the Eighth Circuit reversed because the prisoner was "exposed to an actual future threat under the control of the Department of Corrections—that he will not be provided an interpreter." *Id*. Thus, the injunction the prisoner sought would prevent future harm. *See id*.

This logic compels a similar result in the present case. The record suggests that Colvin's nonkosher status traveled with him to the Marquette Branch Prison. We therefore

cannot conclude that Colvin's wrongful-removal and denial-of-reinstatement claims are moot.

Nor can we conclude that these additional claims are futile, a finding that would render harmless the district court's error in dismissing them.  Under RLUIPA, a prison cannot impose a "substantial burden" on an inmate's ability to practice his religion unless there is a showing that the imposition of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1(a).  The constitutional protection afforded under § 1983 is less strong, however.  *See, e.g.*, *Lovelace v. Lee*, 472 F.3d 174, 199-200 (4th Cir. 2006) (holding that "the First Amendment affords less protection to inmates' free exercise rights than does RLUIPA").  As noted earlier, under § 1983, a prison regulation abridging inmates' constitutional rights is valid if it is "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Turning first to Colvin's wrongful-removal claim, we note that MDOC's policy of removing a prisoner from the kosher-meal program for mere possession of a nonkosher food item may be overly restrictive of inmates' religious rights.  Colvin was removed from the program pursuant to this policy after LMF officials discovered nonkosher protein powder in his cell.  Recently, a federal district court in New Hampshire considered the constitutionality of a prison's "zero tolerance" policy of suspending a prisoner from the kosher-meal program for six months if the prisoner consumed or possessed food in violation of the diet.  *Kuperman v. Warden, N.H. State Prison*, Civil No. 06-cv-420-JL, 2009 WL 4042760, at *6 (D.N.H. Nov. 20, 2009).  Surveying recent caselaw on this issue, the court remarked that

> [a] circuit split is brewing . . . . The Fourth Circuit Court of Appeals recently held that a prison violated RLUIPA when it prevented a prisoner from participating in Ramadan meals and group prayers after catching him breaking his Ramadan fast. *See Lovelace v. Lee*, 472 F.3d 174 (4th Cir. 2006).  In an earlier case, however, the Eighth Circuit Court of Appeals reached the opposite conclusion, upholding such a policy because "[r]ather than burdening Ramadan worshippers, the  . . . policy allows full participation in the fast and removes from the procedures only those worshippers who choose to break the fast." *Brown-El v. Harris*, 26 F.3d 68, 69-70 (8th Cir. 1994).  The *Lovelace* court distinguished *Brown-El* because it applied a First Amendment analysis, whereas *Lovelace* applied the "more

rigorous" RLUIPA analysis.  *Lovelace*, 472 F.3d at 188 n.3.  But a dissenting judge saw no material distinction and argued for the result in *Brown-El*.  *See id.* at 208 (Wilkinson, C.J., concurring in the judgment in part and dissenting in part).

In a case even closer to this one, the Seventh Circuit Court of Appeals recently applied the heightened statutory standard and nevertheless concluded that suspension of kosher diet privileges in response to dietary violations is not a substantial burden on religious exercise because it does not "compel conduct contrary to religious beliefs: [the prisoner] was forced to eat the non-kosher meals only because he turned down the kosher ones."  *Daly v. Davis*, No. 08-2046, 2009 WL 773880 (7th Cir. 2009) (unpublished).  This holding also appears to be in tension with *Lovelace*.

*Id.* (alterations in original) (footnote omitted).  Without further factual development on this issue, we cannot definitively conclude that LMF's strict application of its kosher-meal policies to Colvin was constitutional.

We likewise cannot say as a matter of law that Colvin's failure-to-reinstate claim lacks merit based on the record before us.  In particular, we question the rationale upon which the prison officials relied to deny Colvin's request for reinstatement.  Both Chaplain Riley and Burnett remarked that Colvin self-identified as Muslim, but neither provided any support for this conclusion.  The record further demonstrates that Colvin consistently stated his religious preference as Jewish throughout his incarceration.  In April 2002, for instance, he submitted a "Declaration of Religious Preference" form, indicating his "faith group" as Judaism.  He also submitted numerous grievances during his time at LMF concerning alleged violations of kosher practice by the kitchen staff and the lack of Jewish services and Jewish reading materials.  LMF, moreover, implicitly acknowledged Colvin's Jewish faith by allowing him to participate in the kosher-meal program.

Furthermore, some of the prison officials had reason to know of Colvin's religious beliefs in light of a prior lawsuit that he filed in October 2002.  In that case, Colvin alleged that prison officials at a different Michigan facility improperly excluded him from the kosher-meal program because of insufficient answers that he gave in an interview about his religious faith.  Burnett was named as a defendant in that lawsuit.  The district court in that prior case criticized the prison officials for unconstitutionally requiring Colvin to demonstrate a certain level of objective knowledge about Judaism prior to being allowed to participate in the program, and it ordered the prison to provide Colvin with kosher meals

pending trial.  Soon thereafter, the defendants offered Colvin a judgment in his favor, and the court ordered that Colvin be placed in the kosher-meal program.  Collectively, these facts undermine Chaplain Riley's and Burnett's conclusory assertions that Colvin self-identified as a Muslim.

We further question the remaining rationale provided by LMF in denying Colvin kosher-meal status.  Following an interview with Colvin, Chaplain Riley concluded that he exhibited "minimal knowledge of Judaism and its dietary requirements."  Burnett echoed this assertion in his memo, commenting that, in his interview with Riley, "Colvin provided minimal information in response to a question about his faith's major teachings."  But the touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of "whether the beliefs professed . . . are *sincerely held*," not whether "the belief is accurate or logical."  *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (emphasis in original) (citations and internal quotation marks omitted).  And, under RLUIPA, prison officials are to focus their inquiries on "the sincerity of a prisoner's professed religiosity." *See Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005).

In Colvin's 2002 lawsuit, the magistrate judge faulted prison officials for focusing on Colvin's "knowledge of the tenets of [Judaism]" rather than on the issue of whether he "was subjectively insincere in his embrace" of the religion.  The magistrate judge further remarked that

> [d]efendants' purely objective approach cannot be squared with First Amendment jurisprudence.  In order to be entitled to accommodation, a person's beliefs need not be "acceptable, logical, consistent or comprehensible to others."  *Thomas*, 450 U.S. at 714.  Nor must they be shared by all members of a religion or be part of any orthodox or official interpretation of church doctrine.  *Id*. at 715-16. . . .  Defendants in the present case . . . have gone beyond an inquiry into the subjective sincerity by administering a test on Judaism and judging for themselves the congruence between plaintiff's beliefs and Judaism, as prison officials understand it.
>
> By basing their decision to deny plaintiff's request [for kosher meals] purely on the content of plaintiff's knowledge of Judaism, defendants have set themselves up as arbiters of religious orthodoxy.  To be entitled to be treated as a Jew in prison, plaintiff is not required to demonstrate that he is a good Jew or an expert in the Torah.  He just must show that he sincerely adheres

to the Jewish faith, despite his personal flaws and the obvious gaps in his religious education.

*Colvin v. Curtis*, No. 02-cv-0728, Report and Recommendation (W.D. Mich. Aug. 25, 2003) (Docket Entry 70 at 13-14). Significantly, the prison officials in the 2003 lawsuit had used the same three-question test that Chaplain Riley used when he interviewed Colvin at LMF.

Chaplain Riley and Burnett emphasized Colvin's lack of objective knowledge of Judaism, and thus they appear to have failed to make a proper inquiry into the sincerity of Colvin's beliefs. And, to the extent that their decision to deny Colvin's reinstatement request was based on his lack of objective knowledge, it was unconstitutional. *See, e.g.*, *Love v. Reed*, 216 F.3d 682, 688 (8th Cir. 2000) (rejecting a challenge to the sincerity of a inmate's religious beliefs due to his lack of scripture knowledge, noting that "[w]e would not deny that a Jew's desire to keep Kosher is rooted in religion even if he were not a Rabbinical scholar capable of explaining the more subtle spiritual aspects of Judaism").

We conclude, in sum, that the district court abused its discretion by failing to address the wrongful-removal and failure-to-reinstate claims that Colvin brought in his proposed amended complaint. Neither of these claims is moot, nor was the error in failing to address them harmless, because they cannot be said to be devoid of merit as a matter of law. Because these arguments were not addressed by the district court, and because additional fact finding is likely necessary to resolve these issues, we decline to rule on the merits of Colvin's claims in his proposed amended complaint. *See Mt. Clemens v. EPA*, 917 F.2d 908, 916 n.7 (6th Cir. 1990) (remanding to the district court and declining to affirm on alternative grounds "[b]ecause these arguments were not addressed by the district court and additional fact finding would be required to resolve the issues raised"). Rather, in order to allow the district court to fully consider these claims and to grant the prison officials an opportunity to respond, we will remand this matter for further proceedings.

**D.     Motion for preliminary injunction**

Colvin's final argument on appeal concerns the district court's denial of his motion for a preliminary injunction. Two months following the filing of his original complaint, Colvin was removed from the kosher-meal program for possessing nonkosher protein powder in his cell. His motion for a preliminary injunction requested both that he be

reinstated in the program and that LMF cure the alleged deficiencies in its kosher-food preparation and service.

In his first R & R, the magistrate judge recommended denying Colvin's motion on the grounds that Colvin did not establish a likelihood of success on the merits of his claim that the prison officials violated his constitutional rights, and on the basis that Colvin had failed to demonstrate that irreparable harm would result if the motion was not granted. The district court adopted the first R & R without further comment. Colvin then filed a "Renewed Motion for Preliminary Injunction" seeking similar relief. The district court did not rule on this second motion.

"Whether a preliminary injunction should be granted is a decision left to the sound discretion of the district court." *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 782 (6th Cir. 2005). "A district court, in deciding whether to grant an injunction, abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Id.* (citation and internal quotation marks omitted).

In this case, the magistrate judge recited the four-factor inquiry that this court uses to determine whether a preliminary injunction is appropriate:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (citation omitted). The district court adopted the magistrate judge's conclusions that Colvin would not likely succeed on the merits of his claim and that he would not suffer irreparable harm in the absence of an injunction. It reached this result because Colvin was found in possession of nonkosher protein powder, in violation of the kosher-meal prison policy, and that the sincerity of his religious beliefs was called into question by Chaplain Riley.

Although we question this analysis for the reasons discussed in the previous section, any error made by the district court was harmless because Colvin did not have a strong

likelihood of success on the merits of his claim regarding LMF's errors in executing its kosher-meal program, as discussed in Part II.A. above. Moreover, Colvin's request for reinstatement in the kosher-meal program was improper because he did not bring his wrongful-removal claim in his original complaint. "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). This is because "[t]he purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends [he] was or will be harmed through the illegality alleged in the complaint." *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997). Colvin had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint.

But Colvin sought the same injunctive relief in his second motion for a preliminary injunction, and he brought this motion after filing his proposed amended complaint that sets forth the factual basis for his wrongful-removal claim. Given the arguably meritorious nature of Colvin's propsed amended complaint, the district court's failure to rule on the second motion for a preliminary injunction was an abuse of discretion.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment on the claims in Colvin's original complaint, its denial of his motion for discovery, and its denial of his first motion for a preliminary injunction. We **VACATE**, however, the district court's denial of Colvin's motion to amend and its denial of his second motion for a preliminary injunction. Finally, we **REMAND** the case for further proceedings consistent with this opinion.