NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0488n.06

Case No. 21-1802

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TEMUJIN KENSU,

      Plaintiff - Appellant,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS; PATRICIA CARUSO;
DAN HEYNS; HEIDI E. WASHINGTON;
PATRICIA WILLARD; STEVE ZUBEK;
DOCTOR JEFFREY STIEVE; DOCTOR
WILLIAM BORGERDING; LIA GULICK;
DOES 1–200; MDOC Food Service
Managers; DOES 201–400; MDOC Wardens,

      Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Dec 01, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

OPINION

Before: GIBBONS, GRIFFIN, and STRANCH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Temujin Kensu, who is currently incarcerated in a Michigan Department of Corrections ("MDOC") facility, filed a class action lawsuit under 42 U.S.C. § 1983 alleging that MDOC fails to provide inmates with food and meals adequate to sustain normal health and denies inmates suffering from medical conditions medically necessary diets. The district court denied class certification and granted MDOC's motion for summary judgment on Kensu's individual claims. As to class certification, it held that Kensu did not establish commonality because resolution of the proposed class's claims would require individual inquiries into each prisoner's medical conditions and alleged physical deterioration from eating

MDOC food. For his individual claims, the district court held that Kensu conceded that his claims were barred by claim preclusion, his claims would be precluded even if not conceded, and he failed to exhaust administrative remedies. On appeal, Kensu challenges both holdings. We affirm.

I.

Kensu is a state prisoner currently housed at the Macomb Correctional Facility in New Haven, Michigan. MDOC, which operates the Macomb Correctional Facility, offers three categories of meal menus to inmates. Most of the prison population receives the statewide standard menu. MDOC also offers a vegan/religious menu that inmates can self-select. Finally, MDOC provides therapeutic menus intended to comply with medical staff orders for inmates with special dietary needs. To receive a therapeutic menu option, an inmate first obtains a medical detail from a medical provider at the facility. Then, depending on his or her dietary needs, the inmate may receive one of approximately thirty standard therapeutic menus or a nonstandard menu specifically created to meet the inmate's unique needs.

All three categories of MDOC menus seek to satisfy basic nutritional requirements. For example, MDOC's caloric standard is to provide male inmates with 2,600 calories per day and female inmates with 2,200 calories per day.[1] The menus also incorporate recommended levels of macronutrients and micronutrients. Some therapeutic menus, however, do not always meet these guidelines. For example, the calorie- and carb-controlled menu does not meet the caloric standard. Given this, an inmate's medical provider can order snack bags or supplements in addition to therapeutic meals if appropriate.

---

[1] To initially design its menus and standards, MDOC employed an ad hoc committee of dietitians and food service managers. The committee also recommended the caloric and nutritional content standards after consulting various resources, such as the Dietary Reference Intakes and the United States Department of Agriculture Dietary Guideline for Americans.

At all times relevant to this case, Kensu received a therapeutic menu ordered by his medical provider. His particular menu, though, evolved over time. At first, he received one of the thirty standard therapeutic menus. Later, he began receiving a nonstandard therapeutic menu designed specifically to meet his individual medical needs. At this point, Kensu's diet was severely restricted, so he also received an evening snack bag, nutritional beverages, and nutritional supplements.

Kensu, however, contends that MDOC fails to provide food and meals that meet its own standards. He claims that MDOC menus consist primarily of processed meats, cheese substitutes, white starches, and paste fillers. Kensu also alleges that food portions are undersized, overcooked, or watered down to such an extent that they contain no nutritional value. As a result, Kensu claims that MDOC food causes medical conditions such as high blood pressure, diabetes, and heart disease among the prison population and exacerbates his individual medical conditions.

Kensu has previously sued prison officials in the course of his incarceration, including, most relevant here, a case he brought against various MDOC employees and medical providers in 2012. *See Kensu v. Rapelje*, No. 12-cv-11877, 2015 WL 5161629, at *1 (E.D. Mich. Sept. 1, 2015). In that case, Kensu brought claims of deliberate indifference under the Eighth Amendment and retaliation under the First Amendment. For his deliberate indifference claim, Kensu alleged that MDOC denied him access to a proper diet and to foods compatible with his wheat and dairy intolerances. Ultimately, the district court granted defendants' motions for summary judgment on all claims, finding that Kensu had not established a serious medical need. *See Kensu v. Rapelje, et al.*, No. 12-cv-11877, 2015 WL 5302816, at *1–2 (E.D. Mich. Sept. 10, 2015).

In this current action, Kensu filed an initial complaint on behalf of himself and similarly situated individuals against Aramark Correctional Services, LLC ("Aramark"), Trinity Services

Group, Inc. ("Trinity"), Corizon, Inc. ("Corizon"), and several hundred unidentified MDOC wardens and food service managers. Kensu filed an amended complaint in April 2018 and a second amended complaint—the operative complaint—in November 2018. Kensu's core allegation is that MDOC and several of its employees are deliberately indifferent to the prison population's serious medical needs by not providing them with sufficiently nutritious food to sustain normal health.

At various points in the litigation's history, the district court dismissed Corizon, Aramark, and Trinity, leaving only the MDOC defendants. At the close of class discovery, the district court denied Kensu's motion for class certification, finding that the class lacked commonality. Then, after merits discovery, the MDOC defendants moved for summary judgment, arguing that Kensu's claims were barred by claim preclusion and his failure to exhaust administrative remedies. The district court agreed with both arguments and granted the motion. Kensu timely appealed.

II.

We review the denial of class certification for abuse of discretion. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010) (citation omitted). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (citation omitted).

In its order denying Kensu's motion for class certification, the district court explained that Kensu originally sought to certify the following class, as set forth in his motion and second amended complaint:

> [A]ll current and former incarcerated persons in prisons under the direction of the MDOC who were provided a diet which was inadequate to maintain normal health.

> Plaintiff further seeks certification of a subclass of incarcerated persons under the direct supervision of the MDOC who were not provided a diet commensurate with their medically documented special needs.

DE 113, Op. & Order, Page ID 4567–68; DE 50, 2d Am. Compl., Page ID 1904. The defendants opposed the motion, in part because the proposed class definition was a fail-safe class, "that is, a class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).

In his reply, Kensu conceded that his proposed class needed to be altered to address the deficiencies raised by the defendants. He refined the class definition to: "All inmates incarcerated in MDOC prisons. A further subclass is those MDOC inmates who were not provided medical diets as prescribed by a health care professional." DE 113, Op. & Order, Page ID 4568; DE 99, Reply to Resp. to Mot. to Certify, Page ID 4198. This second proposed class definition was the one that the district court considered, analyzed, and rejected in its April 8, 2020, order.

In his appeal, however, Kensu reverts to his initial proposed class and subclass, identifying a class nearly identical to that in his second amended complaint:

> All inmates incarcerated in prisons under the direction of the MDOC who were provided a diet which was inadequate to maintain normal health. A further subclass is those inmates incarcerated in prisons under the direct supervision of the MDOC who were not provided a diet commensurate with medically documented special needs.

CA6 R. 20, Appellant Br., at 2. According to Kensu, that class "was properly pled and all requirements were met to satisfy the certification of the class." *Id.* at 15. He explains that "[t]he proposed Class and Subclass seek to remedy Appellees' systemic failure to provide Appellant a diet adequate to sustain normal health in violation of the Eighth Amendment." *Id.* at 21. His reply reiterates the class definition used in his opening brief. But this is the same proposed class and subclass that Kensu previously conceded was deficient and which the district court authorized him

to revise. Neither of Kensu's briefs references or discusses his revised class definition that the district court accepted and analyzed in its decision on the motion to certify.

An issue is deemed waived if a party fails to address it. *United States v. Hayter Oil Co.*, 51 F.3d 1265, 1269 (6th Cir. 1995). Because Kensu has failed to object to the district court's decision to deny certification of the second proposed class definition and raises no arguments about that definition in his appellate briefs, he has waived his argument as to class certification on appeal. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005). We therefore affirm the district court's denial of class certification.

## III.

Kensu also appeals the district court's grant of summary judgment on his individual claims. We review a grant of summary judgment de novo. *Colvin v. Caruso*, 605 F.3d 282, 288 (6th Cir. 2010). Summary judgment is appropriate only when "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)(2)). At this stage, "the district court must draw all reasonable inferences in favor of the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the district court, MDOC argued that claim preclusion barred Kensu's individual claims. Claim preclusion prevents parties from litigating matters that "should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Claim preclusion requires:

> (1) a final judgment on the merits in a prior action; (2) a subsequent suit between the same parties or their privies; (3) an issue in the second lawsuit that should have been raised in the first; and (4) that the claims in both lawsuits arise from the same transaction.

*Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) (citations and quotation marks omitted).

The district court first concluded that Kensu had effectively conceded that his individual claims were precluded because he did not meaningfully respond to MDOC's arguments regarding claim preclusion, thus waiving the issue. Issues addressed only "in a perfunctory manner, unaccompanied by some effort at developed argumentation" are deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (citations omitted). Thus, it is not enough "to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* at 995-96. In finding that Kensu waived any defense to the claim preclusion argument, the district court noted that Kensu did not address the issue in his briefing and only superficially responded when questioned during the summary judgment motion hearing. The district court went on to find that claim preclusion would bar Kensu's claims even if he had not waived the issue, because he could have pursued his current claims in *Kensu v. Rapelje, et al.*, No. 12-cv-11877.

On appeal, Kensu does not address the district court's finding of waiver, instead focusing exclusively on the merits of the district court's claim preclusion determination. "Failure to raise an argument in an appellate brief waives the argument on appeal," and "where a plaintiff fails to address the district court's reasoning in disposing of a claim on summary judgment . . . , we have deemed the claim forfeited." *Rees v. W.M. Barr & Co.*, 736 F. App'x 119, 124 (6th Cir. 2018) (citing *Radvansky*, 395 F.3d at 311). Specifically, an appellant's "fail[ure] to address the district court's alternate basis for its decision" renders the other issues raised by appellant "irrelevant." *Grosswiler v. Freudenberg-NOK Sealing Techs.*, 642 F. App'x 596, 599 (6th Cir. 2016). Because Kensu fails to address the district court's determination that he waived the preclusion issue, we

deem the argument forfeited.  Therefore, Kensu's arguments as to the merits of the district court's claim preclusion determination are immaterial.[2]

IV.

For these reasons, we affirm the district court.

---

[2] The district court also determined that summary judgment was appropriate because Kensu did not exhaust administrative remedies as required by the Prison Litigation Reform Act.  Because we find that Kensu's individual claims are barred by claim preclusion, we need not decide this issue.