NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0483n.06

No. 10-1412

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

FILED

*May 08, 2012*

LEONARD GREEN, Clerk

WAYNE EARL LAFOUNTAIN,

    Plaintiff-Appellant,

v.

RANDALL C. MIKKELSEN, et al.

    Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

_____/

BEFORE:    MARTIN, COOK, and KETHLEDGE, Circuit Judges.

    BOYCE F. MARTIN, JR., Circuit Judge. Inmate Wayne Earl LaFountain filed this 42 U.S.C. § 1983 action alleging that Officer Randall Mikkelsen retaliated against him for exercising his First Amendment rights, and that Officers Jim Hargrave and Daniella Rittenhouse aided and abetted Mikkelsen in his unlawful actions. The district court granted summary judgment for the Defendants, identified as the Officers throughout this opinion, because LaFountain failed to demonstrate that Mikkelsen was motivated by LaFountain's protected conduct. For the following reasons, the judgment of the district court is **AFFIRMED**.

I.

    The facts, construed in the light most favorable to LaFountain, follow. On October 25, 2004, LaFountain, an inmate in a Michigan corrections facility, signed up for a pass to use the facility's

law library on October 28. On October 28, LaFountain discovered that the computer-generated pass he needed to visit the law library had not been generated.

LaFountain went to the "unit desk" in his housing unit and asked Officer Willour, who was stationed there, to call the library to confirm that LaFountain was authorized to visit the library that morning. Willour told LaFountain to return at 9:00 a.m. LaFountain soon returned and again asked Willour to call the library. Willour made two attempts to reach the library by phone but the line was busy.

Approximately five minutes later, LaFountain approached the unit desk a third time. Mikkelsen was now stationed at the desk and LaFountain asked him to call the prison library about LaFountain's pass. Mikkelsen refused. LaFountain informed him that LaFountain "was attempting to conduct legal research concerning a pending lawsuit" and that at the "halftime bell" he would leave the unit to "find out what is happening with the law library." Mikkelsen instructed LaFountain "not to go to the library" without a pass. Mikkelsen and Hargrave, who was also present, made "snide comments" and told LaFountain that he "lacked the intelligence to do effective law work."

LaFountain left the unit desk and waited in his cell until the halftime bell rang. When the halftime bell rang, indicating that prisoners were free to enter the prison yard, LaFountain entered the yard and walked to the building that housed the prison library. He "opened the door and, without entering the building, asked the school officer" if the law library was open. Officer Pace was working in the building and told LaFountain that the library was open but that LaFountain could not speak with a librarian and that LaFountain should return to his unit to obtain a pass. LaFountain returned to the prison yard where he spoke to an inmate who worked as the library clerk. The library

clerk told him that the library was "nearly empty," and that the librarians were present and not on the phone.

LaFountain returned to the unit desk. Present at the desk were Officers Mikkelsen, Rittenhouse, Hargrave, and Busch. LaFountain informed them that the law library was open and that the librarians were present and not on the phone. LaFountain asked Mikkelsen to telephone the library to confirm that he was authorized to visit it that morning. Rittenhouse interjected that LaFountain had been "out of place" because he went to the library without a pass. LaFountain explained that he had not entered the library or the building. Busch called the library and a librarian confirmed that the library was open, and that LaFountain had signed up for a pass. Busch issued LaFountain a handwritten library pass. Rittenhouse stated again that LaFountain had been out of place and threatened to issue a misconduct ticket. LaFountain asserted that because he had not entered the school building, any such ticket would be a "false misconduct charge for which [Rittenhouse] could be sued." Hargrave then stated that LaFountain "had better get a new lawyer because [the] last time he had filed suit against [a Muskegon Correctional Facility] employee, [he] had lost." Hargrave also stated that LaFountain was an "idiot" who "lacked the ability and intelligence for prevailing on any lawsuit which was based upon the falsification of a misconduct report." Mikkelsen laughed and agreed with Hargrave's statements. Hargrave then lunged at LaFountain saying, "[d]on't get scared now." Hargrave, Mikkelsen, and Rittenhouse laughed at the interaction, encouraging Hargrave. According to LaFountain, Hargrave's lunge was identical to an earlier action taken against LaFountain by Officer Anthony Martin against whom LaFountain had filed a grievance several months earlier.

Later that day, Mikkelsen issued a major misconduct ticket, charging LaFountain with (1) being out of place; and (2) disobeying Mikkelsen's direct order not to go to the law library without a pass. A hearing officer found LaFountain guilty of disobeying a direct order, but found that LaFountain had not been out of place. In so finding, the hearing officer considered Mikkelsen's statements written on the misconduct ticket; written statements by LaFountain; statements by two inmates on behalf of LaFountain; statements that the librarian, Busch, Pace, and Willour made in response to questions from LaFountain; and LaFountain's library pass. The hearing officer found that:

> Officer Busch heard [Mikkelsen] tell [LaFountain] he could not go to the library. . . . [T]he prisoner disobeyed that order when he went to the [library] building. It is true that he did not go into the library. But he was there about the library issue, he wanted to talk to the librarian, he wanted to resolve the pass issue. That is just what the prisoner was told not to do.

The hearing officer also found that there are two sets of doors to the library building; that LaFountain went through the first set; and, at the second set, LaFountain spoke to Pace but did not go through the second set of doors. The hearing officer found that "the out of place [charge] is not established, as the prisoner did not enter the [library] building." LaFountain was sentenced to three days of "toplock," under which he was prohibited from leaving his cell without explicit authorization and denied certain privileges.

LaFountain filed this suit in the district court alleging that Mikkelsen violated his First Amendment rights by issuing false disciplinary charges against him in retaliation for (1) his prior filing of a grievance against another officer; (2) his statement to Rittenhouse that she could be sued for falsifying a misconduct charge; and (3) his attempts to use the prison library to research a legal

case. He alleged that Hargrave and Rittenhouse aided and abetted Mikkelsen. The Officers moved for summary judgment. The district court granted summary judgment for the Officers, finding that LaFountain could not demonstrate a causal connection between LaFountain's protected activity and the issuance of the misconduct ticket. LaFountain appeals.

## II.

We review de novo a district court's grant of summary judgment. *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 443 (6th Cir. 2012). A grant of summary judgment is proper if the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

To establish a claim of First Amendment retaliation, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action . . . capable of deterring a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by the [prisoner's] protected conduct." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (alteration in original) (internal quotation marks omitted). "If the prisoner can show that the defendants' adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendants to show that they would have taken the same action even absent such protected conduct." *Id.* at 475.

The Officers do not dispute the district court's findings that LaFountain presented sufficient evidence that he engaged in protected activity, and that LaFountain raised a genuine issue of fact as to whether the two misconduct violation charges constitute adverse actions in the context of a First Amendment retaliation claim. We therefore assume, without deciding, that LaFountain meets the first two prongs of the First Amendment retaliation claim. As to the third prong, whether there is a causal connection between a plaintiff's protected conduct and an adverse action is an issue of a defendant's "subjective motivation." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). Where direct evidence of motivation is unavailable, "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Id.* A plaintiff must support his allegations of retaliatory animus with "specific, nonconclusory allegations . . . that could support a jury verdict at trial." *Id.* at 399-400.

We agree with the district court that LaFountain has failed to come forward with evidence connecting his protected conduct with Mikkelsen's decision to file a misconduct ticket.[1] Mikkelsen wrote the ticket but, according to LaFountain, it was Hargrave who lunged at him and mocked his prior legal efforts. Likewise, LaFountain threatened Rittenhouse—not Mikkelsen—with a potential lawsuit. Neither of these actions establish a causal connection. LaFountain's allegation that

---

[1] The parties devote large sections of the briefing to the question of whether the Sixth Circuit has adopted, or should adopt, the "checkmate rule" and whether this case can be decided on the basis of that rule. *See Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007) (noting the "bevy of [Sixth Circuit] unpublished opinions" that have adopted the checkmate rule). Because we find that LaFountain has not made a prima facie showing of causation in this case, we need not reach the issue.

Anthony Martin—who allegedly lunged at LaFountain in a prior event, and against whom LaFountain had filed a grievance—engaged in "derisive gossip" about LaFountain with the Officers on a prior occasion also does not show that Mikkelsen's decision to issue the misconduct ticket was causally connected to LaFountain's protected conduct. LaFountain offers only "bare allegations of malice" as evidence that Mikkelsen acted with retaliatory motivations. *Id.* at 399. LaFountain has not demonstrated a causal connection between his protected conduct and the filing of the misconduct ticket.

LaFountain points to several factors that he believes preclude summary judgment on the issue of causation. First, LaFountain argues that the hearing officer's finding that he was not out of place supports a finding of causation. LaFountain relies on two unpublished orders, each of which involve an inmate who was charged with a single act of misconduct and ultimately found not guilty. *See Scott v. Churchill*, No. 97-2061, 2000 WL 519148, at *2 (6th Cir. Apr. 6, 2000) ("The fact that [an inmate] was found not guilty of [a] violation supports his contention that the report was without a legitimate basis."); *Thaddeus-X v. Cooks*, No. 97-1490, 1999 WL 801558, at *3 (6th Cir. Sept. 28, 1999) (same). Both *Scott* and *Thaddeus-X*, in addition to being unpublished and therefore not binding, are easily distinguishable from LaFountain's case: Mikkelsen charged LaFountain with two acts of misconduct, both based on the same actions, and the hearing officer upheld one of the charges. In contrast, *Scott* and *Thaddeus-X* each involved an inmate who was found not guilty of the single act of misconduct that was charged. Moreover, the plaintiffs in *Scott* and *Thaddeus-X* also presented direct evidence of an officer's intent to file a false misconduct report—alleged threats by the officers involved—to support a finding of causation. While a finding of not guilty may in

some instances support the existence of a causal connection between protected conduct and the filing of a misconduct report, the hearing officer in this case found LaFountain guilty of—and LaFountain admits to—engaging in the acts that formed a basis of the misconduct charge. Therefore, the hearing officer's finding of not guilty on one of the two charges does not, on its own, demonstrate a causal connection between LaFountain's protected conduct and Mikkelsen's decision to file the misconduct ticket.

Second, LaFountain argues that the short time between his protected conduct and Mikkelsen's filing of the misconduct ticket create at least a question of fact about causation. "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (examining temporal proximity in the employment discrimination context and collecting cases). Whether temporal proximity establishes an inference of retaliatory motive depends upon the totality of the circumstances. *Id.* at 401 (characterizing Sixth Circuit case law "as recognizing the possibility that, on a particular set of facts, extremely close temporal proximity could permit an inference of retaliatory motive, but also recognizing that often evidence in addition to temporal proximity is required to permit the inference"). In this case, LaFountain's retaliation claim is otherwise insufficient to raise even an inference of causation. Further, LaFountain's version of the events—that he left the unit after being told not to leave—supports the explanations offered by the Officers. The closeness in time between LaFountain's alleged protected conduct and Mikkelsen's decision to file a misconduct ticket is easily explained by the fact that LaFountain disobeyed a direct order during the same time period—a fact LaFountain admits. LaFountain does

not dispute the hearing officer's finding that "he was [at the library building] about the library issue, he wanted to talk to the librarian, he wanted to resolve the pass issue." Given these circumstances, temporal proximity alone does not raise a genuine issue of material fact about Mikkelsen's motivation.

Third, LaFountain argues that differences between Mikkelsen's account of events in the misconduct ticket and LaFountain's account create a genuine issue of material fact about Mikkelsen's motivation. LaFountain alleges he left the unit after returning to his cell, but Mikkelsen's account makes no mention of LaFountain's return to his cell and alleges only "that LaFountain ignored [Mikkelsen's orders] and walked out of the unit." These accounts are not necessarily inconsistent—Mikkelsen does not deny, and his account does not preclude, that LaFountain returned to his cell. Moreover, LaFountain was charged with going to the library after being directed not to go without a pass—whether LaFountain went immediately to the library or first went to his cell is not material to either the question of whether LaFountain went to the library or the question of Mikkelsen's motivation in filing the misconduct report. LaFountain also asserts that Mikkelsen placed a cardboard sign on the unit desk stating that no passes would issue that day. Mikkelsen denies this. This dispute is also immaterial to Mikkelsen's motivation in issuing the misconduct report. LaFountain failed to demonstrate that retaliation was a "motivating factor" in Mikkelsen's decision to issue the misconduct ticket, and the district court did not err in concluding LaFountain failed to establish a genuine question of material fact on the issue of causation.

LaFountain raises two other arguments on appeal that we must address. First, LaFountain also argues that the district court erred in granting summary judgment to Hargrave and Rittenhouse

on LaFountain's claims that they "aided and abetted Defendant Mikkelsen in the general plan and agreement" to retaliate against LaFountain. LaFountain has not stated a valid claim of First Amendment retaliation against Mikkelsen and, accordingly, his allegation that Hargrave and Rittenhouse "aided and abetted" Mikkelsen also fails. Second, though the district court did not reach the issue of qualified immunity, both parties raise the issue on appeal. Because we find that the district court did not err in granting summary judgment to the Officers, and that LaFountain was unable to establish a violation of his constitutional rights, we need not address this issue.

III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.