RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARIO SENTELLE CAVIN,

    *Plaintiff-Appellant*,

    *v.*

MICHIGAN DEPARTMENT OF CORRECTIONS; DAVID LEACH,

    *Defendants-Appellees.*

No. 18-1346

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-14449—Bernard A. Friedman, District Judge.

Decided and Filed: June 17, 2019

Before: ROGERS, SUTTON, and READLER, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Mario Sentelle Cavin, New Haven, Michigan, pro se. John L. Thurber, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. Mario Cavin is an inmate in the custody of the Michigan Department of Corrections who practices Wicca. While the Department permits Cavin and other Wiccans to congregate on some holidays, it prevents their group worship on others and limits their use of ritualistic items when alone. Cavin filed this lawsuit to eliminate these restrictions and to seek damages. At summary judgment, the district court ruled against Cavin on the damages claim. After a trial, the district court held that the Department's policy did not

substantially burden Cavin's religious exercise under the Religious Land Use and Institutionalized Persons Act.  Because a policy substantially burdens religious exercise when it bars an inmate from worshipping with others and from using ritualistic items, we affirm in part, vacate in part, and remand.

## I.

The Michigan prisons allow Wiccan inmates to worship as a group for eight major holidays known as Sabbats, which occur periodically throughout the year.  Wiccans celebrate other holidays, called Esbats, each lunar month, approximately twelve to thirteen times a year. Cavin wishes to worship with his co-religionists on Esbats.  When Cavin observes Esbats by himself in his cell, he faces additional drawbacks.  The prison permits Wiccan inmates to use candles and incense only in the prison's chapel, so Cavin cannot access the items that he needs for rituals.  And if his cellmate proves unfriendly, Cavin has trouble conducting religious rites.

Cavin asked the Department of Corrections to allow him and other Wiccans to celebrate Esbats together.  Officials denied his request.  In response, he filed this lawsuit, requesting injunctive relief under the Religious Land Use and Institutionalized Persons Act (known as RLUIPA to most lawyers).  He also sought damages from the Department and Chaplain David Leach, who oversees the Department's religious programming.

At summary judgment, the court ruled that Eleventh Amendment immunity barred the damages claims against the Department; that Chaplain Leach deserved qualified immunity; and that only Cavin's RLUIPA claim for religious accommodation could proceed.

After a bench trial, the court rejected Cavin's RLUIPA claim for injunctive relief, concluding that the prison's regulations implicate but do not burden Cavin's exercise of religion.

## II.

RLUIPA prohibits a State from imposing "a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows that the burden furthers "a compelling governmental interest" and "is the least restrictive means" of doing so.  42 U.S.C. § 2000cc-1(a).  That makes the statute a three-act play.  In Act One, the inmate must

demonstrate that he seeks to exercise religion out of a "sincerely held religious belief." *See Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015).  In Act Two, he must show that the government substantially burdened that religious exercise. *Id.*  In Act Three, the government must meet the daunting compelling-interest and least-restrictive-means test. *Id.* at 863.

Cavin clears RLUIPA's initial two hurdles.

First, the district court found that Cavin's sincere Wiccan faith motivates his desire for group worship on Esbats.  The record supports that finding.  Cavin testified that he believed Esbat services have "more energy" "when you have a collective of Wiccans together."  R. 66 at 21.  While he acknowledged that not all Wiccans celebrate Esbats communally, he noted that he and other prisoners would do so if given the chance.

Second, the Department's policy burdens Cavin's desired religious exercise.  Why?  Because it prevents the group worship Cavin seeks.  "The greater restriction (barring access to the practice) includes the lesser one (substantially burdening the practice)." *Haight v. Thompson*, 763 F.3d 554, 565 (6th Cir. 2014).  What's more, the Department's policy prevents Cavin from accessing religious items found only in the chapel, barring him from properly celebrating Esbats in the way he believes he should. *Id.*

Consider a prior case.  A prison prevented Native American inmates from purchasing "corn pemmican and buffalo meat" for a powwow. *Id.*  The denial, we held, constituted a substantial burden on the inmate's religious exercise, even though the inmates could access other traditional foods. *Id.* at 565–66.  The same is true here.  Barring group worship and preventing access to supplies burdens Cavin's religious exercise.

This burden becomes no less substantial because some—maybe many—Wiccans celebrate Esbats alone.  What matters is that Cavin sincerely believes he should celebrate Esbats communally.  The Supreme Court made this point in a case involving the right of a Muslim prisoner to grow a beard.  The prisoner testified that "not all Muslims believe that men must grow beards." *Holt*, 135 S. Ct. at 862.  After noting that the inmate's belief wasn't "idiosyncratic," the court concluded that other believers' practices didn't matter. *Id.* at 862–63.  Why?  Because "the protection of RLUIPA, no less than the guarantee of the Free Exercise

Clause, is not limited to beliefs which are shared by all of the members of a religious sect." *Id.* (quotation omitted).

In response, the Department questions Cavin's sincerity by pointing to evidence that many Wiccans celebrate privately. To be sure, mainstream religious doctrine can help determine whether an inmate really believes his professed faith. *Haight*, 763 F.3d at 567. But the district court found Cavin to be sincere, and we see no reason to overturn that factual finding. The Department never objected when the court ruled that all accepted Cavin's sincerity.

The Department persists that Cavin isn't burdened because he merely "prefer[s] to celebrate in a group setting when possible" and that "celebrating Esbats individually [does] not violate the tenets of Wicca." Appellee's Br. 17. But the Supreme Court shuns this analysis. The Muslim prisoner who wanted to grow a beard testified that "his religion would 'credit' him for attempting" to do so, "even if that attempt proved to be unsuccessful." *Holt*, 135 S. Ct. at 862. RLUIPA protects religious acts even if they are not "compelled." 42 U.S.C. § 2000cc–5(7)(A).

What of a second-best option: celebrating in his cell? That approach reframes the nature of what Cavin seeks to do: worship with others according to his beliefs. When determining the substantiality of a burden, we cannot look to "whether the RLUIPA claimant is able to engage in other forms of religious exercise." *Holt*, 135 S. Ct. at 862; *see Haight*, 763 F.3d at 565. Plus, when Cavin worships privately, he cannot access religious supplies kept in the prison chapel.

The district court did not proceed to the third prong, namely whether the Department's policy prohibiting communal Esbat worship passes strict scrutiny. As "a court of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), we will remand the case to the district court to resolve the point in the first instance.

III.

That leaves Cavin's damages claims against Chaplain Leach and his argument that the district court erred in refusing to appoint him counsel.

*Damages.* Cavin offers three possible ways to recover damages from Chaplain Leach: that RLUIPA provides a damages remedy; that § 1983 provides a separate cause of action to enforce RLUIPA; or that the chaplain violated his First Amendment rights under § 1983.

1. Cavin cannot recover based on RLUIPA alone. Although the statute provides a cause of action by which an individual may "obtain appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), it does not authorize monetary judgments against officials in their individual capacities, *see Haight*, 763 F.3d at 568. When Congress legislates with its Spending Clause and Commerce Clause powers, as it did to pass RLUIPA, Congress must speak clearly. RLUIPA doesn't clearly authorize money damages. *Id.* at 568–70.

2. Cavin cannot use § 1983 to get damages that RLUIPA does not provide. While we typically think of § 1983 claims as vindicating constitutional rights, the statute also authorizes people to sue when state actors deprive them of "any rights, privileges, or immunities secured by the . . . laws." 42 U.S.C. § 1983. To determine whether § 1983 allows someone to enforce a federal statute, we determine whether Congress intended to create an "individually enforceable right" and whether Congress wanted the statute to provide the exclusive remedy. *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120–21 (2005).

RLUIPA creates an individually enforceable right. *Cf. Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) (acknowledging that "rights-creating" individually focused language akin to that found in Titles VI and IX demonstrates congressional intent to create a right enforceable by individuals). But where, as with RLUIPA, Congress provides an "express" cause of action under the statute, it ordinarily indicates that plaintiffs cannot access "a more expansive remedy under § 1983." *City of Rancho Palos Verdes*, 544 U.S. at 121; *see Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009). Put another way, the reality that RLUIPA doesn't allow for damages indicates that Congress didn't intend § 1983 to provide a backdoor to achieving a different result. *See Fitzgerald*, 555 U.S. at 256; *City of Rancho Palos Verdes*, 544 U.S. at 121.

This conclusion comports with our holding that the Spending and Commerce Clauses require Congress to state clearly a law's requirements. *See Haight*, 763 F.3d at 568. Otherwise,

Congress could end-run that clear-statement rule by enacting vague statutes that don't speak to whether parties could sue for damages and allow § 1983 to fill the gap.

3.  As for Cavin's First Amendment damages claim, Chaplain Leach deserves qualified immunity.

Qualified immunity protects those officials whose "conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  That prompts two inquires:  (1) Does Cavin have a First Amendment right to communal Esbat services?  (2) If so, was that right clearly established?

When a prison policy singles out and substantially burdens a prisoner's sincere beliefs, the First Amendment requires us to ask whether the policy serves a valid penological interest. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349–53 (1987) (applying *Turner* to a prison free exercise claim); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) (applying substantial burden analysis to a free exercise claim).  If it does not, the inquiry ends, and the prisoner prevails.  *See Maye v. Klee*, 915 F.3d 1076, 1083–84 (6th Cir. 2019); *Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010).  But if a regulation serves a penological interest, we must balance (1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect "guards and other inmates" or "the allocation of prison resources generally"; and (3) whether "obvious, easy alternatives" exist that suggest "the regulation is not reasonable." *Turner*, 482 U.S. at 89–91.

The factors may cut in Cavin's favor.  *See Ben-Levi v. Brown*, 136 S. Ct. 930, 935–36 (2016) (Alito, J., dissenting from the denial of certiorari).  But the outcome isn't so clear as to place a reasonable official on notice.  For one thing, Cavin possesses alternative means of practicing his religion on Sabbats, and he has a second-best way to celebrate Esbats in his cell. Though that analysis does not play into a RLUIPA claim, it bears some weight in the First Amendment context.  *See Holt*, 135 S. Ct. at 862; *O'Lone*, 482 U.S. at 351–52.  For another, it is notoriously difficult to predict the outcome of a balancing test in advance, making it even more

important that precedent place the question beyond doubt. *Cf. Sumpter v. Wayne County*, 868 F.3d 473, 485 (6th Cir. 2017). Cavin hasn't identified cases that do so.

Cavin instead points us to two out-of-circuit district court opinions involving Wiccan prisoners' religious rights. *See LaPlante v. Mass. Dep't of Corr.*, 89 F. Supp. 3d 235 (D. Mass. 2015) (RLUIPA claim); *Rouser v. White*, 630 F. Supp. 2d 1165 (E.D. Cal. 2009) (RLUIPA and First Amendment claims). But district courts, let alone those in other circuits, don't provide clearly established precedent. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

Cavin adds that we should deny Leach qualified immunity because precedent can put an official on notice even if it does not involve "fundamentally similar" or "materially similar" circumstances. *See* Appellant's Br. 5 (quotation omitted). But the Supreme Court has also told us not to do the qualified immunity analysis from 60,000 feet. *See White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam). Instead, "the clearly established law must be particularized to the facts of the case." *Id.* (quotation omitted). That isn't so here.

*Right to counsel.* We review the decisions to deny Cavin appointed counsel for an abuse of discretion. *See Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993). None occurred.

It is the rare civil case in which a court must provide a party an attorney, and only "exceptional circumstances" require deviating from this rule. *Id.* District courts look to the complexity of the case and the ability of the plaintiff to represent himself. *Id.*

Those factors cut against Cavin. This case does not involve unusually complex issues. And Cavin has represented himself admirably. Today's ruling confirms that. What's more, abuse of discretion is a highly deferential standard, and we are loath to second guess district courts. On remand, however, the court remains free to reevaluate its decision.

We affirm the grant of qualified immunity to Chaplain Leach and the denial of appointed counsel, vacate the district court's decision regarding Cavin's claim for injunctive relief under RLUIPA, and remand for the district court to conclude whether the Department's policy survives scrutiny under RLUIPA.