NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0369n.06

Case No. 23-3671

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| KEITH MUSTIN, | ) | |
| Plaintiff - Appellant, | ) ) | |
| | ) | **FILED** |
| v. | ) | Aug 27, 2024 |
| | ) | KELLY L. STEPHENS, Clerk |
| LYNEAL WAINWRIGHT, RANDON WATSON, | ) | |
| BLAIR SMITH, WENDI GRIFFITH, KASEY | ) | ON APPEAL FROM THE UNITED |
| PLANK, and MICHELLE TURNER, in their | ) | STATES DISTRICT COURT FOR |
| individual and official capacities; MATTHEW | ) | THE NORTHERN DISTRICT OF |
| GUILLER, RYAN JAMES, MELODY BIANCHI, | ) | OHIO |
| and KATRINA ROSTORFER, in their individual | ) | |
| capacities; STATE OF OHIO, interested party, | ) | OPINION |
| Defendants - Appellees. | ) ) | |

Before:  BOGGS, CLAY, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge.  Keith Mustin, an inmate previously housed at Marion Correctional Institution, appeals the dismissal of his *pro se* complaint against six officers at Marion[1] and four employees of food-service contractor Aramark[2] for failure to state a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Equal Protection Clause, and the First Amendment.  We reverse in part and affirm in part the district court's dismissal.

---

[1] Lyneal Wainwright (Warden), Randon Watson (Deputy Warden), Wendi J. Griffith (Buckeye Unit Sergeant), Kasey Plank (Institution Inspector), Blair Smith (Chaplain), and Michelle Turner (Food Service Operator), (collectively, "State defendants" or "Marion defendants").

[2] Matthew Guiller, Ryan James, Katrina Rostorfer, and Melody Bianchi (collectively, "Aramark defendants").

I.

Keith Mustin is a practicing Muslim. This action arises out of alleged violations of Mustin's constitutional and statutory rights related to his attempt to practice his religion while incarcerated. Specifically, Mustin alleges violations of the Free Exercise Clause, RLUIPA, the Equal Protection Clause, and unlawful retaliation in violation of the First Amendment. Mustin's free exercise, RLUIPA, and equal protection allegations are best grouped into three categories: the prison's space allocation, the provision of inadequate food during Ramadan, and the unequal provision of religious resources.

*Space Allocation.* Mustin's faith obligates him to attend Jummah[3]—Friday services. Mustin alleges that throughout 2018 and 2019, defendants Wainwright, Smith, and Watson "constantly" moved Jummah and Taleem services to a "smaller fire hazard room" that could safely accommodate only half of the sixty or more Muslims who attended these services. DE 9, Am. Compl., Page ID 124–26, 141–42. Mustin alleges that he complained to these defendants, but they failed to address his concerns about the size of the room and its fire hazard status, and instead continued to move Jummah to accommodate Christian plays and services that—unlike Jummah—did not need to occur on Fridays in the larger chapel space.[4] Mustin further alleges that Marion officers barred Muslims from attending Taleem services during Christian events when families came to the prison. During these events, officers allegedly directed Mustin and other inmates seeking to attend Taleem "to go back to their dorms" because the location was "locked down." *Id.* at Page ID 126.

---

[3] We spell "Jummah" in accordance with Mustin's briefing.

[4] Mustin alleges that he also complained to defendant Plank in April 2020, who agreed that the Jummah space presented a "fire hazard and an unsafe environment," but did not address the issue. DE 9, Am. Compl., Page ID 126.

*Ramadan.* Mustin next asserts violations arising out of defendants' handling of Ramadan in 2020. During Ramadan, Muslims typically fast from sunrise to sunset each day. *See Heard v. Finco*, 930 F.3d 772, 773 (6th Cir. 2019). Mustin adheres to this practice. He lodged numerous complaints concerning the allegedly inadequate food provided by the prison—contracting through Aramark—to Muslims during Ramadan. Mustin alleges that defendants served raw food, expired drinks, main courses consisting of pork products, and small portions of side foods that fell below the level of calories and nutrition necessary to maintain fasting. This lack of adequate nutrition "distract[ed] [Mustin] from reading his Quran, pray[ing] regularly, and fulfill[ing] his religious obligation of achieving his fasting properly." DE 9, Am. Compl., Page ID 131. Mustin's beliefs also require him to break his fast at sunset with dates. Mustin alleges that the Aramark defendants provided dates for only the first nine days, thus preventing him from participating in this practice for the remainder of Ramadan. Mustin asserts that he alerted defendants Guiller, James, Rostorfer, Bianchi, Turner, Watson, Plank and Smith to these deficiencies, but they failed to take remedial action. Mustin alleges that these defendants did "not even provide[] him with the approved Ramadan menu" of the State corrections department. *Id.* at Page ID 130.

*Provision of Religious Materials.* Mustin further alleges that Marion provided Muslims far less access than Christians to religious media and literature. For example, Mustin alleges that the prison provided e-readers with access to the Bible but not to the Quran and allowed Christians to watch religious programming more often than Muslims.

*Retaliation.* Mustin also contends that Aramark defendants Guiller and Bianchi retaliated against him for filing a complaint about the provision of inadequate food during Ramadan. Mustin filed an informal "kite" complaint with Guiller on May 6, 2020. Three days later, Guiller and Bianchi allegedly issued a false misconduct report against Mustin that resulted in defendant

Griffith's decision to terminate Mustin from his food-service job. Mustin asserts that Griffith should have known that the misconduct report was false, and that her decision to terminate him was also retaliatory.[5] Mustin's misconduct report was later withdrawn after he won an appeal, and Mustin was reinstated to his position on May 28, 2020.

Mustin sued the ten defendants in federal court. Pursuant to state law, the State of Ohio stepped in as an interested party and moved to dismiss on behalf of the six State defendants.[6] The district court granted the State's motion to dismiss based on its finding that Mustin failed to state a constitutional or statutory violation. Based on Mustin's pleading failures, the district court also sua sponte dismissed the case as to the four Aramark defendants under 28 U.S.C. § 1915(e)(2)(B)(ii).

II.

We review a district court's dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) de novo. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). The same holds true for a district court's sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B). *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). At this stage, a plaintiff must allege facts that, when taken as true, "state a claim to relief that is plausible on its face" and that rises "above the speculative level." *Campbell*, 779 F.3d at 427 (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)); *Hill*, 630 F.3d at 471. We must read the complaint "in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences" in the plaintiff's favor. *Campbell*, 779 F.3d at 428 (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). We "liberally

---

[5] Mustin does not appeal the district court's dismissal of his retaliation claim against Griffith. We address his retaliation claim only as to Aramark defendants Guiller and Bianchi.

[6] To our understanding, the Aramark defendants have not participated in this case either before the district court or on appeal.

construe[]" *pro se* complaints and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).

III.

A.  State Defendants

1.  Free Exercise and RLUIPA Claims

Under both the Free Exercise Clause and RLUIPA, Mustin must allege facts sufficient to plausibly show that defendants "substantial[ly] burden[ed]" his ability to adhere to his sincerely held religious beliefs or practices.  42 U.S.C. § 2000cc-1(a); *Ackerman v. Washington*, 16 F.4th 170, 185 (6th Cir. 2021) (discussing burden under RLUIPA); *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) (applying the substantial burden standard in free exercise context); *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458, 460–61 (6th Cir. 2019) (same). RLUIPA defines "religious exercise" broadly to encompass "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Fox v. Washington*, 949 F.3d 270, 278 (6th Cir. 2020) (quoting § 2000cc-5(7)(A)).  Likewise, in the free exercise context, we ask "whether the belief or practice asserted is religious in the plaintiff's own scheme of things." *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (cleaned up).  Government action substantially burdens a plaintiff's religious exercise "when it places substantial pressure on an adherent to modify his behavior and to violate his beliefs" or when it "effectively bars his sincere faith-based conduct." *Ackerman*, 16 F.4th at 184 (cleaned up); *see also Thomas*, 450 U.S. at 717–18 (explaining that putting a claimant to the choice of forgoing an important benefit or violating his religious tenets puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs").

Once Mustin alleges that defendants substantially burdened his ability to exercise his religion, the level of scrutiny required to justify that burden differs between the Free Exercise Clause and RLUIPA. When an inmate-plaintiff brings a free exercise claim, the Supreme Court instructs us to follow the standard laid out in *Turner v. Safley*, 482 U.S. 78 (1987), which provides that the government restriction "is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Under RLUIPA, however, the government must carry a higher burden of showing that the restriction furthers "a compelling governmental interest" and constitutes "the least restrictive means" of advancing that interest. 42 U.S.C. § 2000cc-1(a).

The different levels of scrutiny are immaterial to this appeal because the parties briefed only whether defendants substantially burdened Mustin's ability to practice his Muslim faith.

*a. Jummah and Taleem Services*

Mustin contends that defendants Wainwright, Smith, and Watson substantially burdened his ability to attend Jummah and Taleem by (1) "constantly" moving Jummah and Taleem to small rooms that could safely accommodate only half of the attendees, and (2) inconsistently allowing inmates to attend Taleem services and sending inmates back to their cells to accommodate other religious events. DE 9, Am. Compl., Page ID 123–26, 141–42. Mustin further contends that defendant Plank is complicit because she admitted that Mustin was subject to an "unsafe environment" that presented a fire hazard due to the Jummah and Taleem placement. *Id.* at Page ID 126.

The district court deemed Mustin's allegations insufficient, finding that he was never outright denied a room to attend Jummah or Taleem, and that Mustin conceded in briefing that the specific room in which Jummah was held did not particularly matter to him. State defendants

follow suit and contend that Mustin can succeed only by alleging that defendants "denied [Mustin] the opportunity to participate in" Jummah or Taleem services. CA6 R. 27, State Appellees Br., at 6.

Yet the district court and State defendants misunderstand the substantial burden requirement. Although both cite *Maye v. Klee* for the proposition that a free exercise claim requires that a plaintiff be barred from practicing his religion, the case contains no such proposition. *Maye* found that preventing an inmate from participating in Eid "substantially burden[ed]" the inmate's free exercise rights and thus supported a free exercise claim. 915 F.3d at 1083–84. But *Maye* did not intimate that an outright prohibition on a certain practice was *necessary* to make out a free exercise claim. *See id.* Rather, a plaintiff's initial burden under both RLUIPA and the Free Exercise Clause is to show a substantial burden on his religious exercise. *See, e.g.*, *Cavin*, 927 F.3d at 458, 460–61; *Ackerman*, 16 F.4th at 184. And we have previously stated that a substantial burden may occur with less than an outright prohibition on a religious practice. In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), we highlighted that "[t]he greater restriction (barring access to the practice) includes the lesser one (substantially burdening the practice)," thus demonstrating that a claimant need not allege an outright prohibition to establish the latter. 763 F.3d at 565. *Haight* explicitly recognized that a claimant could demonstrate a substantial burden by alleging that the defendant put "substantial pressure on [the] adherent" to violate his beliefs *or* by alleging that the defendant "effectively bar[red]" the claimant's religious practice. *Id.*; *see also Ackerman*, 16 F.4th at 184.

With this in mind, Mustin properly alleged that defendants Wainwright, Watson, Smith, and Plank substantially burdened Mustin's ability to safely attend Jummah and Taleem by forcing him to put his personal safety at risk in order to fulfill his religious obligations by attending services

in a room packed with roughly twice the number of people it can safely house. Essentially, Mustin was forced to forgo his personal safety to comply with his religion and attend these services. *Thomas*, 450 U.S. at 717–18 (substantial pressure associated with forcing one to modify one's behavior and violate one's beliefs). The relegation of Jummah and Taleem to rooms defendants allegedly knew constituted a fire hazard put "substantial pressure" on Mustin to violate his beliefs by not attending these services. *Haight*, 763 F.3d at 565. That Mustin did not succumb to this pressure does not defeat his claim.

On this point, we believe the district court overread Mustin's statement that the specific space allotted for Jummah and Taleem was not important to him. In his complaint, Mustin repeatedly emphasized his safety concerns about the small space provided for these services. At this stage in the case, Mustin sufficiently alleged a substantial burden on his ability to attend Jummah and Taleem.

Additionally, Mustin alleged that State defendants prohibited him from fulfilling certain religious obligations by barring him from attending Taleem when Christian events were being held at the prison. This court has previously found that preventing a Wiccan inmate from engaging in group worship substantially burdened the inmate's religious exercise under RLUIPA even though he was allowed to worship alone in his cell. *Cavin*, 927 F.3d at 458–59. Here, as in *Cavin*, defendants allegedly "prevent[ed] the group worship [Mustin] seeks" by attending Taleem. *Id.* at 458. Thus, they substantially burdened Mustin's ability to comply with this religious obligation.

State defendants argue that even if these constitutional violations occurred, Mustin failed to identify any specific defendant's personal involvement in the violations as required to state a claim. *See Heyward v. Cooper*, 88 F.4th, 648, 661 (6th Cir. 2023); *see also Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010). We disagree.

True, we have previously held that "[a]llegations of *respondeat superior* do not sustain a § 1983 claim against state employees in their individual capacities." *Caruso*, 605 F.3d at 292. Accordingly, a plaintiff must allege that supervisory officers "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)). Knowing acquiescence in another's unlawful conduct requires more than failing to act in the face of a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). But here, Mustin alleged that Wainwright, Watson, and Smith made decisions concerning the placement of Jummah and Taleem, and that they made those decisions knowing of the fire hazard in order to prioritize Christian events. It is also reasonable to infer that these officials were the decisionmakers in determining whether to allow inmates to attend Taleem while the prison hosted Christian events. *See Heyward*, 88 F.4th at 661 (looking to defendants' positions of authority to determine plausibility of their role in perpetuating the alleged violations). Mustin also alleged that Plank did more than fail to respond to allegations put forth in a grievance, as she found Mustin's allegations of a fire hazard well-founded yet still declined to take action.

Accordingly, the district court erred in dismissing Mustin's First Amendment and RLUIPA claims arising out of Jummah and Taleem for failure to allege a substantial burden on his religious exercise.

### b. Provision of Food During Ramadan[7]

As a preliminary matter, State defendants again assert that Mustin failed to allege personal involvement in the service of inadequate meals during Ramadan. We again disagree. Mustin

---

[7] Mustin's appeal concerning the failure to provide dates for the latter part of Ramadan implicates only the Aramark defendants and is thus not assessed in this section.

alleged the involvement of State defendants Turner, Marion's food service operator, and Watson, the supervisor of the Aramark food-service employees. Although Mustin did not specifically allege the extent of Turner and Watson's involvement in the formulation or service of the inadequate Ramadan meals, Mustin's allegations detailing the two defendants' positions of authority and control in the kitchen, personal knowledge of the inadequate meals, and their failure to address Mustin's problems or to "provide[] him with the approved Ramadan menu" sufficiently establishes their connection to the alleged serving of inadequate meals to Mustin during Ramadan. DE 9, Am. Compl., Page ID 130; *see Heyward*, 88 F.4th at 661. These allegations of involvement distinguish this case from the facts of *Caruso*, in which this Circuit affirmed the dismissal of claims against the state department of corrections director and the activities coordinator because the plaintiff had not alleged that either defendant "was involved in any of the incidents about which [the plaintiff] complains" or was in any way "'actively involved' in the denial of kosher food." *Caruso*, 605 F.3d at 292 (internal citation omitted).

We now move to the merits of these claims. The district court dismissed Mustin's free exercise and RLUIPA claims concerning the food provided during Ramadan after finding that Mustin failed to allege that the meals amounted to a substantial burden on his religious exercise. The district court saw Mustin's failures as two-fold. First, the district court found that serving Mustin meals he did not like did not pressure him to violate his religious beliefs. In doing so, the court relied on our prior holding that while prisoners "have a constitutional right to meals that meet their nutritional needs . . . [and] that do not violate their sincerely-held religious beliefs," "there is no constitutional right for each prisoner to be served the specific foods he desires." *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015). Second, the district court rejected Mustin's challenges to the meals based on their subpar nutritional content because he did not allege any

injury. Accordingly, because Mustin did "not allege he was forced to violate his religious dietary restrictions or otherwise suffered harm," he failed to state a claim for relief. DE 27, Op. & Order, Page ID 419.

We have held that "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Caruso*, 605 F.3d at 290 (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). We consider this obligation met if the prison provides the inmate with food that does not violate his religious dietary requirements and is "sufficient to sustain the prisoner in good health." *Id.* (quoting *Alexander*, 31 F. App'x at 179); *see also Robinson*, 615 F. App'x at 314. This means that an inmate fails to allege a substantial burden where he is served some food that offends his religious dietary requirements but the non-offending food that remains is otherwise sufficient to meet his nutritional needs. *See Caruso*, 605 F.3d at 290–91.

On the flipside, where an inmate is consistently served non-offending food insufficient to sustain him in good health, thus pressuring him to abandon his religious restrictions or potentially face malnourishment, the meals may constitute a substantial burden on his religious exercise. *Welch v. Spaulding*, 627 F. App'x 479, 483 (6th Cir. 2015). In *Welch*, this court affirmed the denial of qualified immunity to prison administrators where an inmate provided evidence that he was served meals containing approximately half the daily calories provided to the general prison population during the month of Ramadan. *Id.* at 484. *Welch* specified that it did not require "a showing of malnutrition for a plaintiff to proceed on such a claim." *Id.* at 483 n.2. Rather, the court recognized that a restrictive diet that substantially diminishes the inmate's spiritual experience can constitute a substantial burden. *Id.* (citing *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1212 (10th Cir. 1999)).

At this early stage, Mustin has alleged facts sufficient to support an inference that defendants' provision of expired, offending, and otherwise nutritionally insufficient meals during Ramadan pressured him to violate his religious beliefs or face potential malnutrition. Mustin alleges that he was served raw food and expired drinks in his breakfast bags, and that his dinner bags often contained pork-based main courses, which Muslims are forbidden from eating.[8] Mustin also alleges that the side courses were smashed together with the main courses and were below the requisite level of nutrition and calories Muslims need to maintain fasting. Thus, Mustin plausibly alleged that the non-expired and non-pork-based foods he received during Ramadan were insufficient in quantity and nutrition quality to meet his nutritional needs. *See Welch*, 627 F. App'x at 483–84; *Robinson*, 615 F. App'x at 314. Further, Mustin alleged injuries stemming from these inadequacies, as he alleged that the lack of nutrition distracted him from his prayer, Quran reading, and other religious obligations related to proper fasting during Ramadan. *Welch*, 627 F. App'x at 483 n.2.

Although the inadequacy of the meals Mustin received and the injuries he allegedly suffered may be dispelled during discovery, we find Mustin's allegations sufficient to survive dismissal.

---

[8] State defendants contend that Mustin did not allege that he was served pork-based main courses during Ramadan. Instead, they argue that Mustin's complaint alleges that he was served "Turkey Bologna or Ham," which they contend means turkey-based substitutes. CA6 R. 27, State Appellees Br., at 10 (quoting DE 9, Am. Compl., Page ID 129). According to Mustin, two out of those three items—bologna and ham, are made of pork. Although one could read Mustin's complaint to allege provision of a turkey-bologna or turkey-ham substitute, one could also read it to allege service of turkey, bologna, or ham. Because we must make all inferences in favor of Mustin at this stage, the latter interpretation wins out. *Campbell*, 779 F.3d at 428.

### c. Remedies Under RLUIPA

In *Haight*, we held that RLUIPA does not allow plaintiffs to sue state officials in their individual capacities for money damages. 763 F.3d at 568–70. In doing so, *Haight* primarily relied on *Sossaman v. Texas*, 563 U.S. 277 (2011), which held that the language of RLUIPA does not unequivocally waive sovereign immunity, and thus does not provide for recovery of damages from states or state officials sued in their official capacities. *Haight*, 763 F.3d at 568. *Haight* imported much of *Sossaman*'s analysis in finding RLUIPA's language authorizing "appropriate relief" not clear enough to authorize an action for money damages in individual-capacity suits. *Id.*; 42 U.S.C. § 2000cc-2(a). In doing so, *Haight* rejected the plaintiff's argument that *Sossaman*'s reasoning was dependent on the presumption of sovereign immunity awarded to states and thus not implicated where an official is sued in his *individual* capacity. 763 F.3d at 568. Since then, the Supreme Court decided *Tanzin v. Tanvir*, 592 U.S. 43 (2020), and interpreted identical language in the Religious Freedom Restoration Act (RFRA)—RLUIPA's sister statute—to clearly provide for damages against officials sued in their individual capacities. 592 U.S. at 48–52. *Tanzin* distinguished *Sossamon*'s interpretation of RLUIPA as dictated by the sovereign immunity interests implicated when suing a state. *Id.* at 51–52. Mustin argues that this intervening decision supports the argument rejected in *Haight* and warrants overruling our holding in *Haight*.

"Whether RLUIPA authorizes money damages against individual officers is a complicated legal issue with far-reaching implications for prisoners and state prison officials across the country." *Walker v. Baldwin*, 74 F.4th 878, 883 (7th Cir. 2023). For a few reasons, we decline to resolve this complex issue at this juncture. Here, the district court did not rely on this ground for dismissing Mustin's claims; thus, we need not go further than addressing the district court's substantial burden determinations that provided the basis for dismissal. *See Fox*, 949 F.3d at 282

(emphasizing that we are "a court of review, not of first view"). We also lack argument for upholding *Haight* in the face of *Tanzin* because State defendants forfeited the position by not raising it in their appellate brief. *See United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir. 2009) ("[A] party does not preserve an argument by raising it for the first time at oral argument."). And to the extent we were to decide this issue, it is not clear that we would interpret RLUIPA in Mustin's favor. The few circuits that have considered the impact of *Tanzin* on the availability of RLUIPA damages have continued to deem such relief unavailable. *See Landor v. La. Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 341–44 (5th Cir. 2023); *Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024). In light of the far-reaching consequences of this determination and the lack of briefing on this issue, we decline to extend the scope of our review beyond the district court's decision and address this issue in the first instance.[9] *See Walker*, 74 F.4th at 883 (declining to review a waived question of RLUIPA damages because it was not briefed by defendants and not addressed by the district court).

## 2. Equal Protection Clause Claims

Mustin bases his equal protection claims on largely the same set of facts as his First Amendment and RLUIPA claims. Specifically, Mustin alleges that various defendants demonstrated less favorable treatment of Muslims when compared to other faiths by (1) relegating Jummah to small, unsafe rooms to accommodate Christian programming in larger spaces; (2) denying consistent access to Taleem during Christian events; (3) providing Muslims with fewer

---

[9] On the issue of injunctive relief, however, we agree with State defendants that Mustin cannot obtain such relief because his allegations concern only past violations. *See Heyward*, 88 F.4th at 656 (finding injunctive relief unavailable to remedy violations that occurred in previous Ramadan).

religious books and media than Christian counterparts; and (4) denying Muslims adequate meals during Ramadan while adequately treating Jewish inmates during Passover.

To establish an Equal Protection Clause violation, Mustin must make a threshold showing of disparate treatment. *Heyward*, 88 F.4th at 660. He must also allege facts sufficient to show discriminatory intent or purpose, but such purpose can be inferred when a classification "disadvantage[s] a 'suspect class'" or "impinge[s] upon the exercise of a 'fundamental right.'" *Koger v. Mohr*, 964 F.3d 532, 544 (6th Cir. 2020) (quoting *Maye*, 915 F.3d at 1085). "[A] facially discriminatory distinction between" religious groups can burden one's fundamental right to religious freedom, meaning that "an invidious purpose may be inferred." *Id.* at 545 (quoting *Maye*, 915 F.3d at 1086) (applying presumption where prison denied Rastafarian's fasting accommodation request while granting requests from Muslims).

Based on our previous free exercise analysis, three of Mustin's four equal protection allegations can be easily resolved. Mustin adequately alleged free exercise violations arising out of the provision of an unsafe space for Jummah, the inconsistent access to Taleem, and the provision of inadequate meal accommodations during Ramadan. And he alleged that, in the course of committing these violations, defendants knowingly treated Muslims less favorably than other religious groups with similar needs. Thus, at this early stage in the suit, Mustin has alleged disparate treatment among faiths and can rely on the presumption of invidious discrimination to establish his equal protection claim. *See Heyward*, 88 F.4th at 662.

The district court came out the other way and dismissed Mustin's equal protection claims after determining that Mustin failed to allege an infringement of his fundamental rights and facts demonstrating discriminatory intent by the decisionmakers. With respect to Mustin's claims arising out of the Jummah and Taleem space, the district court found that Mustin conceded that

defendants moved the rooms merely to accommodate larger Christian events. The district court thus found such resource allocation not to infringe on any rights, and, in any event, reasonably related to legitimate penal interests. But the district court erred in making this determination prior to discovery given the lack of evidence supporting reasonableness at this stage. *Cf. Thompson v. Commonwealth of Kentucky*, 712 F.2d 1078, 1081 (6th Cir. 1983) (making determination at summary judgment stage). Moreover, even if Mustin conceded that the Christian events were larger, he still contends that it was unnecessary to displace Islamic services, which must be held on Fridays, to hold Christian events, which do not need to be held on Fridays. Taking Mustin's allegations as true, he alleges plausible equal protection violations based on these actions.

Mustin's equal protection claim concerning the disparate provision of religious materials and media is different because he does not argue on appeal that this impinges his free exercise rights. *See id.* at 1080; *Caruso*, 605 F.3d at 291–92. Thus, we cannot rely on the impingement of a fundamental right to generate an inference of invidious discrimination. Instead, Mustin appears to allege that defendants acted discriminatorily in treating Muslims less favorably than other religious groups in the provision of religious literature and media. *See Heyward*, 88 F.4th at 660. Because this discriminatory treatment was allegedly based on faith, an invidious purpose can likely be inferred. *Id.* at 662. But we need not definitively resolve this claim, as the district court did not analyze these allegations. Accordingly, we direct the district court to consider these allegations in the first instance on remand. *See Fox*, 949 F.3d at 282.

## B. Aramark Defendants

Mustin also appeals the dismissal of his claims against the Aramark defendants. Although it appears these defendants were served, they have not appeared in the case. Nevertheless, we address the propriety of the district court's dismissal of these defendants.

## 1. Free Exercise and RLUIPA Claims

### a. Provision of Food During Ramadan

Mustin's free exercise and RLUIPA claims against the Aramark defendants arise from their provision of inadequate meals during Ramadan of 2020. For the reasons discussed with respect to the State defendants in Section III.A.1.b, we reverse the district court's dismissal of this claim against Aramark defendants.

Mustin also argues that the Aramark defendants refused to provide dates for the majority of Ramadan. Mustin holds a sincere belief that he must break his fasts with dates during Ramadan. Defendants do not contest the sincerity of this belief, and we may not inquire into the centrality of this belief to Mustin's faith. *See Haight*, 763 F.3d at 566 (describing the scope of our inquiry). Mustin alleges that despite his complaints, the Aramark defendants failed to provide dates after the first nine days of Ramadan. Thus, Mustin properly alleges that the Aramark defendants prohibited him from comporting with his sincerely held religious belief. *See Haight*, 763 F.3d at 565 (deeming officials' denial of Native American inmates' request for certain ceremonial foods a substantial burden under RLUIPA).

### b. Retaliation

Mustin alleges that Aramark defendants Bianchi and Guiller retaliated against him for making a complaint about the food provided during Ramadan by issuing a false misconduct report that caused him to temporarily lose his food-service job.[10] For the following reasons, we reverse the district court's dismissal as to Guiller but affirm as to Bianchi.

---

[10] Even though Ohio does not represent the Aramark defendants, it argued in briefing that Mustin's retaliation claim also failed for lack of state action. We interpret this to be a contention that the Aramark defendants were not acting under color of law for purposes of § 1983 liability. We need not resolve this issue because it was not considered by the district court. However, at least at a

Mustin must allege facts sufficient to plausibly show that: (1) he "engaged in protected conduct, (2) an adverse action was taken that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated, at least in part, by [his] protected conduct." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citation omitted). The district court assumed that Mustin satisfied at least the first element but found that he failed to allege facts sufficient to show the third. We follow suit and assume that Mustin properly alleged that he engaged in protected conduct and experienced adverse action.

For the third element, Mustin must allege facts sufficient to plausibly show that Guiller and Bianchi wrote the misconduct report at least in part because of Mustin's protected activity. *Herron*, 203 F.3d at 415. "This element addresses whether the defendants' subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct." *Hill*, 630 F.3d at 475. If Mustin establishes this motive, the burden shifts to the defendants to show that they would have taken the same course of action absent the protected activity. *Id.* While conclusory allegations of retaliatory motive fail to state a claim, allegations of "circumstantial evidence can suffice." *Id.* In this vein, close temporal proximity between the protected activity and the adverse action can generate circumstantial evidence of a retaliatory motive, but this Circuit has been reluctant to rely on temporal proximity alone. *Id.* at 476.

The district court found that Mustin failed to establish a causal relationship between his grievances and the adverse action based on its finding that, after reviewing the grievance records Mustin attached to his opposition to State defendants' motion to dismiss, Mustin had not filed any

---

glance, it is likely that Guiller and Bianchi can be held liable as acting under color of law as we have previously deemed Aramark—Guiller and Bianchi's employer—capable of such liability. *See Vartinelli v. Aramark Corr. Servs., LLC*, 796 F. App'x 867, 871 (6th Cir. 2019). The district court is free to address this issue if presented on remand.

grievances for three months leading up to the false misconduct charge. Accordingly, Mustin could not rely on temporal proximity to give rise to retaliatory animus on the part of Guiller and Bianchi.

On this point, the district court misinterpreted the record. Mustin alleged that he complained to Guiller via "kites" on May 6, 2020. DE 9, Am. Compl., Page ID 130. Assuming the district court was entitled to rely on documents outside the pleadings when it reviewed the complaint forms provided by Mustin, the absence of the kite complaint in such documents is not inconsistent with Mustin's allegation. It is entirely plausible that some informal complaints would not be included in his grievance file; indeed, a record from May 9, 2020, contained in the grievance document references Mustin making an earlier informal complaint concerning the food portions during Ramadan. Mustin has thus properly alleged that he engaged in protected activity through filing a complaint with Guiller three days before Guiller and Bianchi allegedly submitted a false misconduct report.

We have previously said that "temporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" but we typically avoid sole reliance on temporal proximity. *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (citation omitted); *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). Here, the close temporal proximity of three days between the protected conduct and the adverse action, viewed alongside Mustin's other allegations, surpasses our threshold for showing a causal relationship.

In addition to temporal proximity, Mustin first alleges that he ultimately won his appeal of the misconduct conviction, which supports his allegation that the misconduct charge stemmed from illegitimate motives. *See Funk v. City of Lansing*, 821 F. App'x 574, 584 (6th Cir. 2020) (finding that events following a protected activity can help establish causation). Also, the subject

of Mustin's protected complaint concerned a matter within Guiller's province as a food-service employee, which potentially signals an interest in the subject of the complaint. *Paige v. Coyner*, 614 F.3d 273, 282–83 (6th Cir. 2010) (one-week temporal proximity between protected activity and adverse action, in tandem with defendant's alleged personal interest in the subject of plaintiff's complaints and promulgation of false statements about plaintiff's protected behavior, sufficient to overcome dismissal). Further, Mustin alleged that, as Aramark employees, Guiller and Bianchi were only authorized to file evaluation and incident reports, suggesting that filing this misconduct report was an unusual action. Mustin also alleged that Guiller and Bianchi terminated other Muslim food-service workers for reasons related to religious obligations and complaints about inadequate religious meal accommodations.

These allegations, in combination with Mustin's allegations that the grounds for the misconduct report were contrived, and the "suspicious temporal proximity" between his complaint and the false report, are sufficient to plausibly establish a retaliatory motivation that survives dismissal. *Maben v. Thelen*, 887 F.3d 252, 268 (6th Cir. 2018); *id.* (temporal proximity sufficiently supported retaliatory inference to get past summary judgment where defendant issued a false misconduct ticket immediately after inmate complained about inadequate food portions and other inmates corroborated that the misconduct report was baseless); *Funk*, 821 F. App'x at 584 (two-day proximity between protected activity and adverse action created genuine dispute of fact on causation). *But see LaFountain v. Mikkelson*, 478 F. App'x 989, 993 (6th Cir. 2012) (close temporal proximity did not enable inference of retaliatory intent where plaintiff admitted to engaging in the behavior that gave rise to the misconduct report and thus supported officer's account of events). This by no means establishes that Mustin will succeed on this claim, just that

he has alleged facts sufficient to plausibly demonstrate a retaliatory motive in the making of a false conduct charge.

This conclusion, however, extends only to Guiller, as Mustin has not alleged any facts to show that Bianchi knew of Mustin's May 6, 2020, complaint. Thus, he has not alleged facts sufficient to establish that Bianchi signed the conduct report due in part to a retaliatory motive.

IV.

In sum, we reverse the district court's dismissal of Mustin's free exercise, RLUIPA, and equal protection claims against the State defendants. Similarly, we reverse the district court's dismissal of Mustin's claims against the Aramark defendants, except for the retaliation claim against Bianchi, and remand for proceedings consistent with this opinion. On remand, the district court should determine whether the Aramark defendants were properly served, and whether a motion for default judgment should be considered.